## ST. LOUIS, MEMPHIS & SOUTHEASTERN RAILROAD COMPANY, Appellant, v. CONTINENTAL BRICK COMPANY.

In Banc, October 19, 1906.

1. **CONDEMNATION: Just Compensation: Evidence.** The words of the Constitution declaring that "private property shall not be taken or damaged for public use without just compensation" have the same meaning they have when used in every-day business transactions between man and man. All evidence is guarded by the rules of evidence, but those rules are designed to elicit the truth, to guard the minds of the jury, and to lead them, in a condemnation case, to a just and intelligent conclusion as to what is just compensation.

2. ——: ——: **Opinion.** An assessment of damages in a condemnation case is the result of opinion, and the evidence on which it is based is opinion evidence. And the weight that is to be given the witness's opinion depends, in part, upon the experience he has had in connection with the subject-matter and his opportunity for knowing what he is talking about.

3. ——: ——: ——: **Business Men: Qualified to Give Opinion.** Men who have had experience in the same kind of business as that in which defendant is engaged, who say they know the value of property devoted to that business, and know the effect the construction and operation of a railroad through that property will have upon the value of the property, but do not know the value of such property for farming or other purposes, are qualified to give their opinion in the condemnation case as to the damages defendant has sustained.

4. ——: ——: **Extension of Plant: Instruction.** The witnesses stated that among the elements which entered into the depreciation of defendant's brick-making plant was the location of the railroad so close to the kilns as to cut off the only means of extending the plant, and that but for the railroad the capacity of the plant could be doubled at comparatively small expense; and in an instruction given by the court for defendant specifying the elements of damages that might be taken into consideration, the jury were told to consider "the hindrances, if any, to the extension or enlargement of defendant's plant." *Held,* that both the evidence and the instruction were proper, and were not erroneous as authorizing an estimate of damages based on future possibilities, but related to a destruction or depreciation of the then present value of the property.

5. ——: ——: Cross-Examination of Commissioner: Award in Other Cases. A cross-examination of a commissioner by defendant, in which, for the purpose of showing his inconsistency in estimating defendant's damages, he is asked if he had not as commissioner awarded a large named sum to another land-owner as his damages for a like appropriation, is not improper.

6. ——: Switch: Instruction. The railroad was constructed through a part of defendant's property used for manufacturing brick, and plaintiff offered evidence, by way of offsetting the damages, on the feasibility of constructing a switch to defendant's kilns as a useful appurtenance to defendant's property. An instruction given for defendant told the jury that in considering the question they should consider that to obtain a switch the defendant would either have to obtain the consent of the railroad company or convince the Railroad Commissioners that the defendant's business was such as to justify it, and if the Railroad Commissioners should allow it the defendant would have to bear the cost of building and maintaining it. *Held*, that the instruction correctly expressed the law.

7. ——: New Country. The opening up of new country by the construction of a railroad is not a special benefit to the defendant in a condemnation proceeding.

8. ——: Fires. A present depreciation in the value of a manufacturing property because of its added peculiar liability to fire due to the construction of the railroad, notwithstanding the railroad may be ultimately liable for damages incurred from fire if one should occur, is a proper element of damages to defendant in the condemnation proceeding.

9. ——: Offering Materials to Defendant. Evidence that plaintiff railroad had offered to give to defendant brick-manufacturing company the clay excavated out of the land in the construction of the road, and that defendant declined it, should be excluded. Damages in condemnation proceedings are to be paid in money.

10. ——: Instruction: Peculiar Location. "Peculiar location" used in an instruction in the sense of special or particular, does not mean that there was something peculiar in the location of the road, and is not an erroneous or offensive use of the word "peculiar."

11. ——: Effort at Compromise. A witness should not be permitted to determine whether or not a negotiation was in the nature of a compromise, and a question which leaves with him that right should be excluded.

Appeal from St. Louis County Circuit Court.—*Hon. John W. McElhinney,* Judge.

AFFIRMED.

*L. F. Parker* and *John G. Egan* for appellant.

(1) It is error to admit testimony of a witness as to the value of land taken, or the amount of damages to the land not taken, where it appears that the witness does not know the market value of the land in question. Railroad v. Stewart, 50 Kan. 33; Gorgas v. Railroad, 114 Pa. St. 1; Railroad v. Gilchrist, 4 Wash. 509; Railroad v. Easley, 26 Pac. 731; Railroad v. Pearson, 35 Cal. 260. (2) It is error to admit testimony of the value of clay in land considered separately from the value of the land itself. Railroad v. Balthaser, 119 Pa. St. 472; Searle v. Railroad, 33 Pa. St. 64. (3) It is not competent to admit testimony as to possible damages that might arise in the contigency that the brick plant should be enlarged by constructing additional kilns. Spring City Gas Light Co. v. Railroad, 167 Pa. St. 6; Railroad v. Knapp. Stout & Co., 160 Mo. 409; Dorlan v. Railroad, 46 Pa. St. 520; Fleming v. Railroad, 34 Iowa 358; Tallman v. Railroad, 121 N. Y. 119; Burt v. Wigglesworth, 117 Mass. 302. (4) It is not proper to permit, on cross-examination of plaintiff's witness, to be brought out what amount was allowed on the condemnation of the right of way for this railroad, over another tract of land. City of Springfield v. Schmook, 68 Mo. 394. (5) Under the Missouri Absolute Liability Fire Statute, 1111, Revised Statutes 1899, it is not proper to permit the jury to take into consideration the danger from fires being set out by locomotives, as affecting the market value of the land. Railroad v. Donovan, 149 Mo. 103; Railroad v. Shoemaker, 160 Mo. 433; Railroad v. North, 31 M. C. 350. (6) In States where there is no Absolute Liability Fire Stat-

ute as to fires set out from locomotives, the true rule is that only such damages can be allowed to the market value of the land as are caused by danger from fires not negligently set out, and the danger from fires negligently set out should not be considered. Mundorf v. Railroad, 62 Hun 467; Railroad v. Freeman, 210 Ill. 270; Railroad v. Gilchrist, 4 Wash. 509; Railroad v. Kregelo, 32 Kan. 613; Setzler v. Railroad, 117 Pa. St. 56. (7) The opportunity to obtain transportation facilities for this brick yard by the construction of a spur track connecting with the line of the plaintiff, constituted a special benefit, which should have been considered by the jury. Railroad v. McElroy, 161 Mo. 586; Railroad v. St. Louis Union Stock Yds. Co., 120 Mo. 564; Railroad v. Fowler, 142 Mo. 683; Railroad v. McGrew, 104 Mo. 291. (8) It is wrong to single out particular facts and instruct the jury to consider them. Railroad v. St. Louis Stock Yds. Co., 120 Mo. 564.

*J. L. Minnis* for respondent.

(1) (a) Defendant's witnesses were qualified to express their opinions as to the value of the ground taken and the depreciation of the remainder. Railroad v. Norcross, 137 Mo. 432; Railroad v. Calkins, 90 Mo. 543; Railroad v. DeLissia, 103 Mo. 130; Railroad v. St. Louis Union Stock Yards Co., 120 Mo. 550; McReynolds v. Railroad, 110 Mo. 492; Warren v. Mayer M'fg. Co., 161 Mo. 125; Union Elevator Co. v. Railroad, 135 Mo. 375; Railroad v. Dawley, 50 Mo. App. 488; 2 Lewis on Eminent Domain (2 Ed.), sec. 437, p. 953, and sec. 478, p. 1048; Railroad v. Warren, 137 U. S. 348. (b) Plaintiff waived its objections to the qualifications of defendant's witnesses by showing by them on cross-examination that additional railroad facilities would be advantageous to defendant's property. Nichols v. Nichols, 147 Mo. 402; Hume v. Hopkins, 140 Mo. 75. (c)

Plaintiff cannot complain of the qualifications of defendant's witnesses, because it pursued the same course and adopted the same theory in its own behalf. Lohman v. Stack, 94 Mo. 677; Schroder v. Michel, 98 Mo. 50; State v. Dettmer, 124 Mo. 432. (2) (a). Where two kinds of ground used in connection with each other but for different purposes and differing in value and in their relation to what remains, are taken for a right of way, it is proper for the witnesses to state the value of each kind separately and the depreciation resulting from taking each kind in giving their estimates of the just compensation. In other words, it is proper for witnesses to give the elements which enter into their estimates of such compensation. And especially in a case where such method is the most intelligent and accurate. "Arbitrary and lumping methods should not be resorted to in assessing damages in condemnation proceedings." Railroad v. Fowler, 113 Mo. 470; Railroad v. Story, 96 Mo. 622; Railroad v. McGrew, 104 Mo. 289; 1 Sutherland on Damages, pp. 800-802; Railroad v. Donovan, 149 Mo. 102. (b) Plaintiff cannot complain because it pursued the same method in examining its witnesses. Railroad v. Donovan, 149 Mo. 102. (c) Plaintiff's objections were technical and even if well taken the judgment should not be reversed. Railroad v. George, 145 Mo. 49; McReynolds v. Railroad, 110 Mo. 492. (d) No evidence was offered by defendant as to "the value of clay in land considered separately from the value of the land itself." (3) (a) No evidence was offered by defendant "as to possible damages that might arise in the contingency that the brick plant should be enlarged by constructing additional kilns." (b) The taking of the only part of the factory site available for extending and enlarging the factory was a proper element to be considered in determining the depreciation in value of the ground not taken. The rule is, "what is the decrease in value of

the remaining portion in view of the uses to which it may be put, and not simply in reference to its productiveness to the owner in the condition in which he has seen fit to leave it." Mississippi River Bridge Co. v. Ring, 58 Mo. 496; Railroad v. McGrew, 104 Mo. 290; Webster v. Railroad, 116 Mo. 114; 2 Lewis on Eminent Domain (2 Ed.), sec. 478-9, pp. 1048 to 1056; Mills on Eminent Domain (2 Ed.), sec 173; Boom Co. v. Patterson, 98 U. S. 403; Railroad v. Warren, 137 U. S. 348. (4) (a) Defendant did not bring out "on cross-examination of plaintiff's witness what amount was allowed on the condemnation of the right of way for this railroad, over another tract of land." (b) The cross-examination of plaintiff's witness Wilkins with respect to what he as a commissioner allowed an adjoining land-owner, was proper as tending to contradict his statement that defendant's property, even if considered as a farm, was not damaged by the taking of the right of way. Where a witness has expressed an opinion as to value, the limit of cross-examination is within the discretion of trial judge. Thompson on Trials, sec. 413, pp. 312-3; 1 Rice on Evidence, p. 483; Muller v. St. Louis Hospital Assn., 5 Mo. App. 401, affirmed in 73 Mo. 242; Ardevance v. Arnot, 31 Mo. 471; State v. Robb, 90 Mo. 30; State v. Nelson, 101 Mo. 464. (5) Defendant's instruction 7, which authorized the jury to consider possible danger from fire in so far as it might affect the value of the ground not taken, was proper. Railroad v. McGrew, 104 Mo. 294; Matthews v. Railroad, 121 Mo. 338. (6) Defendant's instruction 2, which authorized the jury to consider the various elements in determining the decreases, if any, in the value of the remaining land, was proper. Railroad v. Shoemaker, 160 Mo. 430; Railroad v. George, 145 Mo. 45; Smith v. Kansas City, 128 Mo. 28; Railroad v. Shambough, 106 Mo. 569; Railroad v. Clark, 121 Mo. 187. (7) The offer of plaintiff to show that he tendered

the clay excavated on the right of way to defendant and that defendant declined to accept it, was properly refused. Defendant is entitled to be compensated in money. Railroad v. McGrew, 104 Mo. 299. (8) Plaintiff's offer to show his conversation with defendant's president while endeavoring to agree with him on the compensation, was properly refused. Railroad v. McGrew, supra; Railroad v. Eby, 152 Mo. 606.

VALLIANT, J.—Plaintiff in this proceeding is condemning a right of way for its railroad through a tract of land owned by defendant, near the city of St. Louis, containing 153.13 acres. The defendant is a brick manufacturing concern and has, located on this tract of land, its brick-making plant, consisting of machinery, kilns, houses and appurtenances. A branch of the Missouri Pacific Railway passes near the defendant's works and there is a switch track into its premises. The plant had been built about ten years before the trial, during three years of which time it had not been operated. It was purchased by defendant in 1900 at a foreclosure sale under a mortgage for $50,000 and accumulated interest, and had been operated by defendant ever since. According to defendant's testimony the machinery, kilns, buildings, etc., constituting the plant, would cost to construct at the date of the trial $75,000 to $100,000.

On the filing of the petition commissioners were appointed by the court who made their report awarding to defendant the sum of $2,750; exceptions to the report were filed by defendant and a trial by jury was asked and granted. At the trial the jury assessed the defendant's damages at $14,000, and a judgment for that sum less $2,750, the amount of the commissioners award which had been paid to the defendant, was rendered in defendant's favor, and the plaintiff appealed.

The record contains in minute detail a description

of defendant's property, and the course of the proposed railroad through it, but it is unnecessary to repeat that description here. Appellant's assignment of errors relate chiefly to evidence of defendant admitted over plaintiff's objection, and evidence offered by plaintiff and excluded on objection of defendant. The giving and refusing of instructions is also assigned.

I. D. A. Marks, president of the defendant brick company, a witness for defendant, after giving a description of the property and the course of the railroad through it, stated that it was property particularly valuable for brick-making purposes; being asked to state the elements going to make it valuable for that purpose he said, the quality and quantity of clay, the cheapness of fuel, the possibility of marketing brick at a low rate of freight, the abundance of water, the lay of the land so that the clay can be moved to the plant at the least expense. "Q. Do you know the market value of clay lands located in that vicinity? A. There are no other brick plants in that vicinity and there has been no transfer of property for that purpose in a good many years around there." He was then asked to state the market value of the fifty feet of clay land of defendant taken by the railroad, to which plaintiff objected on the ground that he had not shown himself competent to answer. Thereupon in answer to questions by the court he said that he knew of no sales in that neighborhood, or nearer than four or five miles, and of them he only knew from hearsay, but that he knew the value of clay land generally over the United States, he had talked with his competitors who had estimated the value of such lands, he knew that clay lands adjacent to the manufacturing end of the plant were more valuable than those distant. The court ruled that witness might answer the question and he answered placing the value of that part of

198 Sup—45

the condemned right of way embraced in the strip fifty feet wide across the flat near the kilns, without reference to the other property, at $2,500, and to further questions he said that the other clay land taken by the railroad company was worth $1,375 an acre. The witness was then asked to state how much in his opinion the taking of the strip of the railroad company would decrease the market value of the property as a whole, to which the plaintiff objected as incompetent, irrelevant and immaterial and not the proper measure of damages, and because the witness has not shown himself qualified to testify; the court overruled the objection and the witness answered that he estimated the depreciation in value of the whole plant at $40,000. He was asked to state what elements he took into account in making that estimate, to which he answered that the largest element was that the location of the road made it impossible to extend operation of the plant. In further explanation of this point he said that the only practicable way of extending the plant with profit was to build more kilns to the east of those now in operation, which could not be done with the railroad where it is. Witness also stated that the danger to the plant from fire from the trains passing on the trestle thirty-eight feet high over the works depreciated the market value of the plant. On the whole he estimated defendant's damage at $50,000.

Mr. Elliott, vice-president, secretary and treasurer of the Hydraulic Press Brick Company, a witness for defendant, stated that he had been in the business thirty years, his company owned fifty-eight plants, none in St. Louis county; they had bought fifty acres of clay land within a mile of defendant's plant but had not worked it, they paid $105 to $125 an acre for it, it would be valued as farm land only until a brick yard is established on it. He knew defendant's property and how it was worked; in his opinion the running of

the railroad through it depreciated its value $40,000. In explanation of his estimate he said that but for the railroad, located so close to the kilns, the defendant could double the capacity of its plant, without increasing the machinery it now has, by building six more kilns to the east of those now there. This testimony was objected to on the same grounds as to that of Mr. Marks. On cross-examination the witness was asked: "What was the value of that 153 and a fraction acres on the 12th day of last November—brick plant and all? A. I am sure I could not answer that question. Q. Do you know what its value was at that time? A. No, sir. Q. What was its value when the railroad was located there at that time? A. I do not know."

Mr. Ittner who had been in the brick manufacturing business forty years and knew the defendant's property, had examined it in reference to the effect of the running of this railroad through it as located, gave it as his opinion that the value of the property was depreciated to the extent of $20,000 to $40,000.

On the part of the plaintiff the testimony tended to show that the market value of land of that kind in that neighborhood ranged from $100 to $150 an acre. The commissioners who were farmers living in the county and familiar with the value of lands in the neighborhood of defendant's property testified as witnesses for the railroad company, and estimated the total value of defendant's whole property, the 153 acres, brick plant and all, at from $13,000 to $28,000, and estimated the damages at the amount of their award, $2,750. In the opinion of plaintiff's witnesses the defendant's property would derive an increased value by the location of the railroad through it, in the increased facilities for reaching the markets with its products.

There was quite a conflict in the opinions of the witnesses for the plaintiff and those for the defendant

on the question of the feasibility of putting a switch track from the plaintiff's railroad into defendant's premises, owing to the topography of the country and the peculiar structure and course of the railroad.

The chief insistence of appellant is that the court erred in admitting the testimony of Marks, Elliott and Ittner giving their opinions as to values and the amount of depreciation of value to the whole plant.

The grounds of the objections were that the testimony was incompetent, irrelevant and immaterial and not the proper measure of damages, and that the witnesses did not show themselves qualified to testify. Those grounds, except the last one, were too general to give the trial court an idea of the real point they were intended to cover; the only point of the objection sufficiently specific was the last, that is, that the witnesses were not qualified to give an opinion.

We have, in the witnesses for the plaintiff and those for defendant, two classes of experts, each class viewing the subject from a different standpoint. The one class is proficient in knowledge of the value of such lands in the neighborhood as farm lands, but it has no knowledge of the value of such lands when their character is changed by the erection of costly machinery and thereby being made the field of operation for a brick-manufacturing purpose; the other class is proficient in knowledge of the value of such property when converted into a brickmaking plant, but has no knowledge of its value as farming land.

Our State Constitution ordains: "That private property shall not be taken or damaged for public use without just compensation," [Sec. 21, art. 2.] What is "just compensation?" Those words as used in the Constitution mean exactly the same that they mean when used in every-day business transactions between man and man; they are not circumscribed by any technical definition that places them beyond the

comprehension of men of ordinary intelligence. The evidence that goes to the jury impanelled to make the assessment is guarded by the law of evidence and the duty is on the court to see that only legal evidence is given, but the rules of evidence are aimed to elicit the truth, to guard the minds of the jury from false light and lead them to a conclusion which their common intelligence and sense of justice unite in saying is "just compensation."

An assessment of damages in a condemnation case is the result of opinion, and the evidence on which it is founded is opinion evidence, even what is deemed as well-known market value of property has its foundation in opinion.

In weighing opinion evidence one of the criterions by which it is to be valued is the experience that the witness has had in the subject and his opportunity of knowing what he is talking about. The rules of evidence in regard to expert testimony are drawn from the same reason that actuate intelligent laymen in their business affairs. In the case at bar the defendant after having invested a large amount of money and established its manufacturing business was compelled to yield up a portion of its property to the plaintiff who came armed with the power of eminent domain and defendant now asks the court to award it that just compensation which the Constitution has promised. How shall we ascertain that sum? On the one hand, we have the opinions of men who have spent the best part of their lives in the same kind of business as that in which the defendant is engaged who say they know the value of such property when equipped for that business and they know the effect that the construction and operation of the railroad through it will have, but do not know the market value of such lands in that vicinity for farming or other purposes; and on the other hand, we have the opinions of men who knew the general

market value of such lands but knew nothing of its value as the site of a brick plant. To which set of witnesses shall we listen? Suppose a company of intelligent business men should be organized to go into the brick-manufacturing business and aimed to buy such a plant, but before investing their capital they wanted information as to the value of the property to be purchased, to which set of these witnesses would they turn for advice? If common business sense would lead them to seek the advice of men experienced in that business so the reason and common sense upon which our rules of evidence are founded require us to seek information from the same source. These men may not know the market value of land in that vicinity, not even of clay grounds unconnected with a brick-making plant, but they do know the value of such a property as that of defendant as a whole located within four or five miles of a great and growing city, whether it be St. Louis, Chicago or other city, and that knowledge is exactly what is needed in order to arrive at an intelligent estimate of the "just compensation" called for in a case like this.

The court did not err in ruling that those witnesses were qualified to give expert evidence, and if the jury credited their testimony they could not have awarded less damages than they did.

II. The defendant's expert witnesses were asked to state the elements which entered into their calculation of the depreciation of the value of the property, and among those elements they stated that the location of the railroad close to the kilns on the east cut off the only means of extension of the defendant's plant, and that but for the railroad the capacity of the plant could be doubled at comparatively small expense. In an instruction given by the court at the request of the defendant specifying the elements of damages that might be taken into consideration the jury were au-

thorized in making their award to take into account
among other things "the hindrance, if any, to the ex-
tension or enlargement of defendant's plant." Appel-
lant complains of this evidence and instruction as au-
thorizing an estimate of damages based on "possibili-
ties of the future." We do not so understand it.
The witnesses were estimating the value of the pro-
perty as it was in November, 1902, when the railroad
company invaded it. In estimating its then value they
took into account its capacity as a brick-making con-
cern, not only as then developed, but also as it was then
capable of being further developed, and if it was true,
as they said it was, that without increasing the ma-
chinery and equipment as then existed, except to build
other kilns in a line to the east of those already there,
the capacity of the plant could be doubled, that was a
then present existing fact which gave a then present
value to the property, and a destruction of it was a
depreciation of its then value. [Boom Co. v. Patter-
son, 98 U. S. 403; Mississippi River Bridge Co. v. Ring,
58 Mo. 491, l. c. 496.]

There was no error in the court's ruling on that
point.

III. A witness for plaintiff, Wilkins, a farmer
living in the neighborhood, testified that in his opinion
the construction of the railroad through defendant's
property did not damage it to any extent. It is com-
plained by appellant that on cross-examination the
witness was allowed to say what the commissioners had
allowed to Mrs. Chrismer, whose farm was near de-
fendant's property, for her damages for the location
of this railroad through it. That complaint seems to
be founded on a misunderstanding of the evidence
brought out on the cross-examination of this witness.
He had been one of the commissioners who had as-
sessed Mrs. Chrismer's damages, and had agreed with
the other commissioners in awarding her $1,650 for

about two acres of her land taken in the right of way, and the cross-examination only tended to show the inconsistency of his low estimate of defendant's damages with his own estimate of the widow's damages. We find no error in that.

IV.   There was a good deal of testimony pro and con on the question of the feasibility of constructing a switch from plaintiff's railroad into defendant's premises so as to make it a useful appurtenance to defendant's property.   That subject was presented very favorably for the plaintiff in a series of instructions given at the plaintiff's request.   The evidence, even for the plaintiff, left it not clear, whilst that for the defendant was to the effect that the peculiar construction of the railroad and the topography of the country made it practically impossible to construct a serviceable switch from plaintiff's railroad into defendant's premises.   But the court submitted the question to the jury and plaintiff has no right to complain if the jury came to the conclusion that the defendant could gain no benefit from that source.   In instruction 5 given for the defendant the court instructed the jury that in considering the switch question they should consider that to obtain a switch the defendant would either have to obtain the consent of the railroad company or convince the Railroad Commissioners that the defendant's business was such as to justify it, and if the Railroad Commissioners should allow it the defendant would have to bear the cost of building and maintaining it. That instruction is complained of, but we think it expresses the law correctly.   The plaintiff complains also that the court nullified the instructions given at its request on this subject by the following instruction given for the defendant:

"The court instructs the jury that in arriving at their verdict they should not consider the benefits, if any, that may accrue to defendant by reason of the

construction of said road which are common to other land-owners in the vicinity of said road, parts of whose lands are not taken, nor should the jury consider the opening up of new country by the plaintiff as a special benefit to the defendant.''

The meaning of that instruction was that the opening up of a new country was not a benefit special to the defendant that was not shared in by the public in general. We find no error in that.

V. One of defendant's witnesses testified that among the elements considered by him in estimating the damage of the defendant was the danger from fire caused by the trains passing on the trestle thirty-eight feet high over the works of defendant; when on cross-examination his attention was called to the fact that the railroad company was liable under the statute for damage by fire set out by one of its locomotives, he said that was so, but the fact that a manufacturing plant was thus exposed to destruction by fire was an element of depreciation in its value even if the owner knew that he was entitled to recover damages from a railroad company at the end of a lawsuit. An instruction given at the request of defendant informed the jury that the railroad company would be liable under the statute to pay for property destroyed by fire set out by one of its engines, and that therefore the jury should not include in their estimate of defendant's damages the possible damages that might be caused in that way, but that if the jury should find that defendant's property was specially exposed to fire from that cause, different from other property in the same neighborhood, and that thereby defendant's property was depreciated in value they should allow for such depreciation.

The opinion of the witnesses that there is a present depreciation of value in manufacturing property because of its peculiar liability to destruction by fire notwithstanding a railroad company may be ultimately

liable for the damages incurred if the fire should occur, is not unreasonable. A prudent business man would generally prefer to purchase property in which to conduct his business which is not peculiarly liable to destruction by fire even though the menacing party may be solvent and liable to respond in damages. There was no error in that instruction.

VI. Plaintiff offered evidence to show that it had offered to give the defendant the clay excavated out of the land in the construction of the road and that defendant had declined it; the testimony on objection of defendant was excluded. There was no error in that ruling; in the first place there might be a question as to whether clay quarried as that was in a general excavation for the purpose of railroad construction was of any practical value to the defendant, but even if it was, the law is not satisfied with the payment of damages in "chips and whetstones," but requires it to be paid in money.

VII. In one of the instructions given at the request of defendant, after enumerating various items to be considered in assessing the damages, it was said: "and generally all matters, owing to the peculiar location of the railroad over defendant's land as may in the judgment of the jury affect the convenient and future enjoyment of the same considered as a whole," etc. Appellant complains of the word "peculiar" as there used, as an intimation to the jury that in the opinion of the court there was something peculiar in the location of the road. Whilst the word "peculiar" sometimes has an offensive meaning, yet its natural and usual meaning is particular or special, and that is the sense in which it was used in this instruction.

VIII. A witness for the plaintiff who had been the plaintiff's right of way agent, and had, before the commencement of this suit, with a view of obtaining a right of way by agreement, talked with Mr. Marks, the

president of the defendant, was asked if in that conversation the subject of a switch was mentioned and what was said, but the defendant objected on the ground that it called for what was said in an effort at compromise and the court sustained the objection.

In. the question propounded to the witness the counsel for the plaintiff stated that he did not ask for what may have been said in an effort at compromise, but only for what was said in the negotiation for the right of way. That form of the question left the right of way agent to judge whether or not the negotiation was in the nature of an effort to compromise, and if in his legal opinion it was not then he could tell all that was said. The court ruled correctly on that point.

We find no error in the record. The judgment is affirmed. *Brace, C. J., Gantt* and *Lamm, JJ.,* concur; *Burgess, Fox* and *Graves, JJ.,* dissent.