CITY OF ST. LOUIS, APPELLANT, v. PARAMOUNT SHOE MANUFACTURING CO., A CORPORATION, ET AL., DEFENDANTS, PARAMOUNT SHOE MANUFACTURING CO., A CORPORATION, RESPONDENT.—168 S. W. (2d) 149.

St. Louis Court of Appeals. Opinion filed February 2, 1943.

Appellant's motion for rehearing overruled February 19, 1943.

Petition for Writ of Certiorari denied by Supreme Court April 5, 1943.

202

204

*Joseph F. Holland, James B. Steiner* and *Oliver T. Johnson* for appellant.

*A. B. Frey* and *Frey & Korngold* for respondent.

208

210

BENNICK, C.—This is a proceeding in condemnation which was instituted by the City of St. Louis pursuant to an ordinance providing for the condemnation of private property for the establishment, opening, and widening of Chippewa Street between Gravois Avenue and Meramec Street in said city, all to be done in connection with a proposal for the separation of the grades of Chippewa Street and the tracks of the Missouri Pacific Railroad Company. Among the property owners affected by the condemnation was respondent, Paramount Shoe Manufacturing Company; and this appeal is by the city from the final judgment in the case awarding respondent the sum of $7,000 as its damages sustained by reason of the taking of a portion of its land in the making of the improvement.

It appears that in 1928, respondent, at a cost of $8,776.33, bought a tract of land fronting 125 feet on the south side of Chippewa Street, with a depth southwardly of 195 feet 10 inches. Both Chippewa Street and Gravois Avenue were unimproved at the time; and respondent's idea in locating its plant in that vicinity was to be in an industrial section of the city where a supply of skilled shoe workers might be the more readily available, and where there would be ample room for any future expansion of its buildings and plant facilities. Concluding, however, that the amount of land originally purchased would not be sufficient for all its purposes, respondent, a short time later, purchased an additional adjoining 35 feet for $2,448.29, making the total cost of its land $11,224.62. Subsequently, upon the institution of a condemnation suit to widen Chippewa Street, respondent voluntarily gave the city a strip 20 feet deep from off the entire front of its land, thus reducing the depth of its land to 175 feet 10 inches, which was as it stood on November 22, 1937, the date of the valuation in the case at bar.

It also appears that after the purchase of its land, but before the condemnation now in question, respondent was compelled to pay benefit assessments aggregating $1,874.47 in connection with the widening of both Chippewa Street and Gravois Avenue, which assessments, when added to the purchase price of the land, represent a total expenditure by respondent of $13,099.09.

In the improvement of its premises, respondent left a clearance of 30 feet along the entire east side of its land as a space to be utilized for receiving and shipping out merchandise, and then upon the remainder of the land constructed an inverted L-shaped building, the vertical or front wing of which fronted on Chippewa Street for a

width of 50 feet 1¾ inches immediately to the west of the 30 foot space which had been left for clearance. The building extended southwardly for a depth of 171 feet 1⅜ inches, or almost to the southern extremity of the lot, while the horizontal or rear wing of the building extended to within 9 feet 11½ inches of the western boundary of the lot, thereby taking up, for all practical purposes, the entire width of the rear 50 feet of the land.

The cost of the building was $108,000, and as a consequence of the manner of its construction, there was left, in what may be referred to as the northwest portion of the lot, a vacant section fronting 79 feet 10¼ inches on Chippewa Street, and extending southwardly for 121 feet 1⅝ inches to the front of the rear wing of the building. This space was purposely reserved by respondent as the site of a future building or addition similar in construction to the building erected on the east and south sides of the lot, and designed, when completed, to join on to the existing building and form a U-shaped building covering the major portion of the premises.

The original plans and specifications specifically provided for the construction of such future addition; and when the L-shaped building was erected according to such plans and specifications, all of the supports on both the west side of the front wing and the north side of the rear wing were reinforced at considerable extra expense to respondent so as to carry the additional load which would result from the attachment of the future building. Furthermore, in keeping with this intention, the machinery, when installed, was so located, under the supervision of an expert from the United Shoe Machinery Company, that it would readily coordinate with corresponding machinery to be similarly located in the new addition, and thereby result in doubling the productive capacity of the plant.

While such new building had not been erected by the time of the trial below, respondent's failure to have erected it was in no sense due to any abandonment of its plan for the future expansion of its plant facilities, but on the contrary was attributable, first, to the business depression, and then to the threat of global war, all of which had served as a deterrent to such an undertaking until better conditions should be assured.

By this proceeding the city is seeking to condemn and cut off a triangular tract at the extreme northwest corner, of respondent's land, fronting 70 feet 11½ inches on Chippewa Street, and extending southwardly to a depth of 28 feet along the western line of the property. The portion taken contains 994 square feet; and as the space which respondent had reserved for its future expansion is now bounded, it has a horizontal frontage of only 8 feet 10¾ inches, with the remainder of its frontage on a sharp diagonal line representing the hypotenuse of the triangular tract taken. Such a lay of the land, according to respondent's evidence, serves as a vital hindrance

to the expansion of its plant facilities in the manner originally planned and contemplated, and thereby materially reduces the fair market value of the entire property.

As a matter of fact, such consequential damage allegedly resulting from the limitation put upon the plant's future expansion was the chief factor taken into consideration by respondent's witnesses in fixing the damages occasioned by the taking, which were variously estimated by respondent's witnesses as being from $27,000 to $30,500. The land actually taken was not only unimproved, but represented only 3½ per cent of the total area of the premises, so that its value necessarily represented but a minor part of the total injury sustained according to respondent's theory of the case. The city's witnesses, on the other hand, estimated the difference in the value of the property before and after the taking at far less amounts, ranging from $398 to $1,080. The jury, for its part, adopted a middle course, and, as already pointed out, awarded respondent $7,000, which, while far below the estimates of respondent's witnesses, was nevertheless far above the estimates of the city's witnesses.

The great burden of the city's complaint has to do with the question of whether it was proper to admit in evidence all the testimony and exhibits introduced by respondent which related in one way or another to the issue of hindrance to the expansion of respondent's plant facilities as a factor to be considered in determining the ultimate question of what would constitute just compensation for the taking of a portion of the property for public use. Actually the question resolves itself into one of whether resulting hindrance to the expansion of the plant was in truth a proper factor to be considered upon the issue of consequential damage to the part of the premises not taken, since if it was, and if it was to be shown in terms of restricted production, then all of respondent's evidence specifically directed to that issue was competent, and any complaint to its admission should necessarily be disallowed.

In a case such as this, where only a part of the whole property is taken, the owner is not in all events restricted to compensation for the part actually taken (which frequently may constitute the least amount of the entire injury done), but he is also entitled to recover for whatever consequential damages may proximately result to the remainder of his land by reason of the taking of a part. The entire tract of land is to be considered as a whole; and the measure of damages, as the parties are agreed, is the difference in the reasonable market value of the entire tract before and after the appropriation of the part actually taken for the improvement. From a practical standpoint this is merely to say that the damages sustained are to be regarded as a unit, although made up of integral parts—the value of the land taken, and the injury to the remainder; but before damages may be recovered upon the theory of injury to the re-

mainder, they must be direct and certain at the time of the appropriation, since if they are but remote or speculative, they are too uncertain to be taken into account in estimating the depreciation in the value of the land.

In the case at bar the city argues that there was no damage sustained to the portion of respondent's property not actually taken in the proceeding, and that the only damage respondent has suffered is for and on account of the taking of the small triangular tract for the immediate purposes of the improvement. Consequential damages are of course not limited to physical injury to the remainder of the property, and the question, therefore, is whether the evidence of hindrance to expansion was direct and certain, and related to a then existing fact materially resulting in a depreciation in the value of the whole property as of the date of the appropriation.

In estimating the amount of consequential damages sustained, or, in other words, the amount of the depreciation in the value of the land, the owner is entitled to have the jury informed as to all those facts relating to the condition of the property which would naturally impress a person of ordinary prudence in negotiating for the purchase of the same. The use to which the property has been devoted, and its capability or special adaptation for such use, are of course primary elements to be taken into account; and anything which is directly injurious to such capability or special adaptation for a particular use, and thereby affects the market value of the property, is therefore competent to be shown as a legitimate factor in bringing about the total damage sustained for which it is contemplated that the owner shall receive just compensation.

In the case of a business establishment, where the property (such as respondent's) is particularly suited for the special use to which it has been put, it is entirely logical that in planning the establishment, ground should have been reserved for future expansion and enlargement; and it is reasonable to assume, as respondent's evidence discloses, that the capability of the premises for such future expansion and enlargement would constitute one of the essential elements which one in that business would take into consideration in arriving at the fair market value of the property. This is not to say that compensation may be awarded upon the theory of injury to future buildings which do not exist, for of course it is true that damages may only be recovered for injury sustained as of the date of the appropriation. If the proof shows, however, that the immediate result of the appropriation is to hinder expansion so as to depreciate the market value of the property as of the date of the appropriation, it relates, in such circumstances, to a then existing fact, and is proper to be shown as one of the elements to be considered in determining the amount of compensation to be awarded. [St. Louis, M. & S. R. Co. v. Continental Brick Co., 198 Mo. 698, 96 S. W. 1011.]

In this instance, respondent's intention to expand its plant was at all times a fixed and present one, first evidenced by its acquisition of additional land within two weeks after its purchase of the site of its plant, and again emphasized at the time of its erection of the L-shaped building, which was purposely built according to plans and specifications which contemplated the installation of additional supports on to which the future building might be joined. Moreover, as pointed out, the machinery was located in the L-shaped building with a specific view to its coordination with similar machinery in the new building, the failure to have erected which was due, not to any lack of need for it, or to the abandonment of any such intention, but solely to general business and financial disturbances over which respondent had no control.

There was abundant evidence to show that the hindrance to expansion resulting from the appropriation of the triangular tract was a matter directly and proximately affecting the value of the whole property as of the 'date of the appropriation; and such fact was therefore not only a proper element of damage to be shown by respondent, but it was competent to be shown in terms of limited production, which was the most accurate manner in which the extent of such damage was capable of ascertainment. It is to be kept in mind that the question was not one of recovery for loss of profits or for injury to business as such, all of which, in and of itself, is regarded as too speculative and remote to be considered as a basis for ascertaining the damages in a condemnation proceeding. On the contrary, the question was one of a present existing fact or condition affecting the then present value of the property as decreased by the taking of the particular portion which the city appropriated; and so regarded, respondent's evidence relating to the resulting hindrance to expansion was relevant to the issue, and the court was right in overruling the objections to its admission. [St. Louis, M. & S. R. Co. v. Continental Brick Co., *supra*.]

The point is made that the court committed error in admitting in evidence respondent's Exhibits Nos. 2 and 3, which were photographs taken from the top of respondent's shoe factory looking west and north. Taken two days before the trial, they disclosed the conditions existing immediately adjacent to respondent's property with respect to the construction of the improvement; and their admissibility was urged upon the ground that the use to which the property appropriated was being put entered into the measure of damages in the case in so far as such character or manner of use might affect the value of the whole property after the appropriation. The city, on the other hand, opposed the admissibility of the photographs upon the theory that they did not show respondent's property itself, but did show the viaduct which was under construction as a part of the change of grade in Chippewa Street, and thereby had

the possible tendency to confuse the jury upon the question of damage from change of grade, which the city insisted was not an issue in this proceeding.

There was and could well have been no secret about the fact that the very purpose of the improvement was to effect a separation of the grades of Chippewa Street and the intersecting line of the Missouri Pacific Railroad Company, since not only did the improvement ordinance so provide, but the fact of such provision was also recited in the city's petition upon which the case was tried. Granting that the case is purely a condemnation suit and not an action for damages for change of grade, it does not follow that all reference to the change of grade or the construction of the viaduct was foreign to the matters legitimately involved in this proceeding. On the contrary, the character of use for which the improvement was designed was a proper factor to be considered upon the question of the damage done to the portion of respondent's property not taken by the appropriation; and respondent's counsel time and again reiterated that damages, as such, were not being asked for change in grade, and that their only purpose in directing the attention of the witnesses to such circumstances in the case was to determine to what extent the change of grade or nature of the improvement was being taken into account in appraising the loss that respondent had suffered by reason of the condemnation. The court consistently held that all such evidence was admissible for the purpose of informing the jury with respect to the conditions surrounding respondent's property, and error was neither committed in the introduction of the photographs (State ex rel. v. Bengal (Mo. App.), 124 S. W. (2d) 687), nor in the subsequent allusions to the conditions which the photographs disclosed.

It is contended that the court erroneously admitted in evidence both the cost of respondent's land and building (the land having been acquired, and the building constructed, quite some time before the date of valuation), and also the fact of subsequent benefit assessments which increased the value of the property.

The city has stipulated with respondent that the cost of the building, exclusive of the cost of the ground, was $108,000, a fact, incidentally, which was testified to by respondent's witness Shapiro, the architect who had prepared the plans for the construction of the building; and having so stipulated for the purposes of our determination of the case, it seems rather inconsistent for the city to argue that reversible error was committed by the admission in evidence of the item covered by the stipulation, as well as by the admission of the additional items of original cost and increased value to which complaint is now directed.

However, quite aside from any question of waiver or lack of timely objection below, we can not agree that reversible error was

committed by the admission in evidence of the original cost of respondent's land and building, and of the fact that subsequent benefit assessments were paid which had been levied against respondent's property upon the very theory that its value had been increased because of the construction of the prior improvements.

Generally speaking, all evidence of value is admissible in a condemnation suit which an ordinarily prudent person would take into account in reaching his conclusion respecting the fair market value of the property under consideration, in line with which it is generally held that the price paid for property is admissible as some evidence of its value at the time of the appropriation, except where the purchase was so remote in point of time as to afford no fair criterion of value at the date of valuation, or else where it appears (which is not true in this case) that special considerations of some sort may have induced the original purchase at a price other than its true value. [29 C. J. S., Eminent Domain, sec. 273, p. 1267.]

In the case at bar, the evidence of original purchase price, construction cost, and benefit assessments was therefore properly to be considered for whatever it was worth in estimating the value of the property at the time of the appropriation, and the court committed no error in connection with its admission.

Complaint is made that in appraising the damages, respondent's evidence, in part, duplicated the damages by the addition of specific items otherwise included in the general estimate of loss. If the charge were sustained by the record, it would indeed be a material one, since the measure of respondent's damage was the difference in the value of the property before and after the appropriation; and it was essential that such figure, whatever it was, should take into account each and every specific element of damage which went to make up respondent's total loss.

The record discloses, however, that the charge is not well taken, but on the contrary, grows largely out of the fact that in appraising the total damages, the witnesses were inclined to approach the question from the standpoint of the value of the land actually taken, plus the resulting damage to the part not taken, which, as we have already pointed out, is merely another way of determining the difference in value before and after the appropriation, but without any duplication of damages, as the city would infer.

There is the further point that the court admitted certain evidence of the high cost of land immediately adjacent to respondent's land, which evidence, it is claimed, was speculative and foreign to the issues in the case. Complaint is also made to the testimony that if such land should be acquired by respondent, and its additional building erected upon such land, the cost of the operation of the plant under such circumstances would be greater than would be the case if it were possible for such new building to be erected and joined

on to the present L-shaped building in accordance with the original plans and intention of respondent.

Inasmuch as the chief element of damage to the part of respondent's property not taken was the resulting hindrance to expansion because of the impossibility of carrying out respondent's building plans with the triangular tract of land taken away at the northwest corner of the premises, it was competent for respondent to show, not only the cost of any adjacent land upon which a future additional building might be erected, but also the infeasibility of operating its plant under the conditions which the erection of a new building at that location would impose. All this was relevant to the issue in the case, for if additional land could be acquired upon which respondent's enlarged plant could be completed and operated as satisfactorily as would have been the case upon the land originally bought for that purpose, then obviously there would have been no injury done to respondent's property through hindrance to expansion, and its total damages could hardly have exceeded the value of the land actually taken by the appropriation.

It has been said that in the case where no available land is owned by him whose lands is taken by the condemnation, the price at which he may buy equally valuable, convenient, and accessible land may be shown by the owner as measuring the amount of depreciation to which the land damaged, but not physically taken, has been subjected. [City of St. Louis v. St. Louis, I. M. & S. Ry. Co., 272 Mo. 80, 197 S. W. 107.] In this case, it was undoubtedly respondent's duty, when injured by the appropriation of a part of its land, to minimize the damage to the remainder if it could; and the circumstance that it could not expeditiously do so was therefore a proper matter to be shown in evidence upon the question of the total damage for which it was entitled to receive just compensation.

Complaint is made that the court erred in admitting the testimony of Wolf, the president of respondent company, to the effect that if it were not for the condemnation proceeding, and some prospective purchaser should desire to buy the land appropriated by the city, he would not sell it for $40,000, or $50,000, because its sale would cause that much loss to the company. The point is that the test of the damage done to respondent was not the sum for which it might have been willing to sell the land appropriated by the city, but instead its actual value on the market.

The above came as part of the answer to a question as to what, in Wolf's judgment, was the loss that respondent would suffer by reason of the taking of the particular portion of its property. Prior to the answer, there had been an unvailing objection based upon Wolf's alleged lack of qualification to testify as an expert on real estate values, but there was no objection interposed to the particular matter now complained of, as by a motion to strike it out. The only

step taken by counsel for the city was to inquire if there was still time to interpose a further objection, not to the answer, but to the question, at which point respondent's counsel announced that he would withdraw the question so as to avoid further argument about it. Of course respondent's damages were not to be determined in the light of what may have been its personal unwillingness to sell; but in the absence of a specific attack upon the answer, and with the question to the witness ultimately withdrawn, there is no basis in the record for the city's insistence that reversible error was committed.

The last point in connection with the admission of evidence is that the court erroneously permitted respondent's witness Shapiro to place a valuation upon the property in question and estimate the damages which were sustained by reason of the appropriation. Shapiro, it will be recalled, was the architect who had drawn the plans for the L-shaped building that was erected; and the point is that as an architect by profession, he was not qualified to testify as to real estate values.

The assessment of damages in a condemnation case is necessarily and inevitably the result of opinion; and the considerations which govern the admissibility of opinion evidence are, for practical purposes, identical with those that actuate ordinarily prudent persons in looking for advice in connection with the conduct of their own personal business affairs. It follows, therefore, that if a witness, whatever his occupation or profession, is one whose opinion would be sought after and given weight by ordinarily prudent persons seeking information upon the question of the value of or damage done to the property which is the subject of the inquiry, he is competent to give his opinion in evidence in the case so far as the matter of his qualification is concerned.

What his opinion may be worth will depend upon the experience he has had in the general field of the inquiry and his opportunity of knowing what he is talking about in the special case before the court; and that he may lack personal knowledge of local real estate values will of course be a factor to be taken into account in determining the weight to be given to his testimony. On the other hand, a man thoroughly familiar with real estate values might, at the same time, have had no experience with the practical operation of a business such as the one damaged by the appropriation, with the result that his opinion, for that reason, might be entitled to carry but very little weight with the jury. After all, the question of land value may be one of minor importance in estimating the consequential damage done to a growing and expanding business; and if the witness has information which entitles him to form an intelligent opinion with respect to the total damages sustained, then he is a competent person to express that opinion to the jury so as to aid it in the performance of its special function of determining the just compensation

to be awarded in the case. [St. Louis, M. & S. R. Co. v. Continental Brick Co., *supra.*]

In the instance under consideration, respondent's counsel made it clear that he was not undertaking to elicit Shapiro's opinion upon the basis of his knowledge of real estate values, but instead upon the basis of his information upon the question of loss of production value as the same might affect the ultimate question of the difference in the value of the whole property before and after the appropriation. In the case of this, a going business, the general fact of its productivity and adaptation to a special purpose was highly relevant in so far as it related to the question of the extent to which the value of the property would be presently impaired by reason of the hindrance to the most convenient and economical expansion of the business. Viewed in this light, Shapiro's opinion was one that would reasonably impress ordinarily prudent persons seeking intelligent information upon the question of the damage done to the property; and the court was guilty of no abuse of its discretion in ruling that he was qualified to testify.

Complaint is also made of the fact that Shapiro was permitted to testify that respondent's property was particularly adapted for use as a shoe manufacturing establishment. This point has been effectually answered in connection with what has been said regarding the matter of his qualification as a witness. Suffice it to say that the availability or adaptation of the particular property for certain uses is a proper factor to be taken into consideration in determining the question of its value (State ex rel. v. Cox, 336 Mo. 271, 77 S. W. (2d) 116), and no error was committed in allowing the witness to take that circumstance into account in reaching his conclusions as to the damage done by the appropriation.

Passing to the instructions, the city assigns error to the refusal of its requested Instruction A, which would have told the jury that any "future" injury to respondent's business resulting from the restriction which the appropriation had imposed upon its capacity to expand was not an element of damage to respondent's property, and that all the evidence, if any, of such "future" injury should be disregarded by the jury in arriving at their verdict.

This instruction was properly refused for the want of relevancy to the actual issues in the case. Respondent at no time sought damages for injury to its "future" business, but only for injury resulting from hindrance to expansion, which was then a present, existing fact, and which brought about a depreciation in the value of ·the property as of the time of the appropriation. Nor, in fact, were damages sought for injury to respondent's "business," unless the term was employed to refer to respondent's existing property, the depreciation in the value of which was the measure of respondent's just compensation.

These defects in the instruction would alone have justified its refusal, but there is even more to the matter than this. We may assume that the instruction was actually sought by the city for the purpose of having the jury charged that in determining respondent's consequential damages, if any, the matter of hindrance to expansion .was not a proper element to be considered. The contrary is true, as we have already pointed out, and if the reference in the instruction to "future" injury should be disregarded, and it should be held as having merely undertaken to withdraw from the case the question of hindrance to expansion as the same might affect the then market value of the property, it was none the less properly refused under the authority of St. Louis, M. & S. R. Co. v. Continental Brick Co., *supra*.

The next complaint has to do with the alleged error in the refusal of the city's requested Instruction B, which was designed to tell the jury that the market value of that portion of respondent's property which was actually taken was not to be determined by the value of the land to the city, nor by the city's necessity of acquiring it, nor by its peculiar value to respondent, and that such considerations should in no way be allowed to affect the determination by the jury of the value of the whole property, or of the strip sought to be appropriated by the city in this proceeding.

Such statement of the law was of course correct, and any refusal on the part of the court to have so charged the jury might well have constituted prejudicial error. The court indeed recognized the propriety of such a charge, and while refusing the city's instruction, gave, of its own motion, instruction No. 4, which told the jury that the market value of respondent's property .was not to be determined by the value of the strip appropriated to the city, nor by the city's necessity of acquiring it, nor by its value to respondent, but that instead its market value was that sum which respondent could obtain, if it wanted to sell, but was not compelled to sell, from one who wanted to buy, but was not compelled to buy. It is thus to be seen that the matter embraced in the city's requested Instruction B was fully covered by instruction No. 4, the giving of which would therefore have cured any error in the refusal of Instruction B. · [Hicks v. Vieths (Mo.), 46 S. W. (2d) 604; Moll v. Pollack, 319 Mo. 744, 8 S. W. (2d) 38.]

But as a matter of. fact, Instruction B, regardless of its correct pronouncement of the law, was nevertheless properly refused for the reason that typed underneath it, and accompanying it, was the following highly argumentative statement of the city's counsel in support of why it should be given:

"(This instruction was specifically approved in the case of St. Louis, K. & N. W. Ry. Co. v. Knapp-Stout & Co., 160 Mo. 408, the exact instruction being quoted at the bottom of page 408. The holding of said Knapp-Stout & Co. case above cited in approving ,

said instruction was expressly approved in St. Louis v. Smith, 325 Mo. 471, l. c. 479, decided June 11, 1930, and a similar instruction in the form of a Declaration of Law approved.)''

No doubt such statement was intended for the benefit of the court; and for such purpose it would have been proper and right if it had been prepared in such a manner that it might have been detached and retained by the court at the time the instruction was handed to the jury. Such was not the case, however; and consequently there was no recourse for the court but to refuse the instruction in the form requested by the city. Indeed it is surprising to find counsel insisting that the court committed error in refusing such an instruction, and especially so when the court, with due regard for the protection of the city's rights, saw fit to give a corresponding but proper instruction of its own motion informing the jury of the several considerations which were to be excluded in estimating respondent's damages.

Error is next assigned to the giving of respondent's Instruction No. 2, which was an instruction on the measure of damages, and correctly announced the rule that the measure was the difference in the fair market value of the property before and after the appropriation. Following the announcement of such rule, the instruction further charged the jury that in determining such fair market value, they might take into consideration the location and the uses to which the property was adaptable and suitable both before and after the appropriation, and having regard to the existing business or wants of the community, or such as might be reasonably expected in the near future, ''together with all the conditions as shown in evidence in this case.''

The city's objection is addressed to the above quoted clause, which, it is claimed, gave the jury a roving commission to base their verdict upon testimony which was not admissible in evidence. Having disallowed all the city's contentions regarding the admissibility of evidence, it is obviously follows that the instruction is not to be condemned upon any such ground of complaint against it. As a matter of fact, it was the duty of the jury, in estimating the damages, to consider all the conditions shown in the evidence; and if error had been committed in such respect, it would have been in the admission of the evidence, and not in the giving of such direction to the jury.

The last instruction complained of is respondent's Instruction No. 6, which submitted the question of hindrance to expansion as a factor to be considered in determining the depreciation in the fair market value of the property. The challenge is not to the form of the instruction, but to the propriety of the consideration of such an element of damage, a matter which has been fully answered by what has been said in regard to the admissibility of evidence upon that point.

It is finally insisted that there was no substantial evidence in the case to support an award of damages in the sum of $7,000. As briefed by the city, this point likewise presupposes that respondent's evidence of damage was erroneously admitted, and that the several estimates of its witnesses were based upon illegal and improper elements of damage. For reasons already appearing, there is no merit to this contention.

Along with the case has been taken respondent's motion for an award of damages not exceeding ten per cent of the amount of the judgment under Section 1230, Revised Statutes Missouri 1939, Missouri Revised Statutes Annotated, section 1230. The record affords no basis for holding that this appeal was taken merely for vexation and delay, but on the contrary, presents fairly debatable questions of law upon which the city was entitled to seek the decision of this court. Respondent's motion for an award of damages should therefore be overruled.

It follows that the judgment rendered by the circuit court should be affirmed, and the Commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court is, accordingly, affirmed, and the respondent's motion for an award of damages overruled. *Wm. C. Hughes, P. J.,* and *McCullen* and *Anderson, JJ.,* concur.