ST. LOUIS HOUSING AUTHORITY, a Municipal Corporation (Plaintiff), Appellant,

v.

Rosie L. BAINTER et al., Defendants, Planet Oil Company, a Corporation (Parcel 138) (Defendant), Respondent.

No. 45167.

Supreme Court of Missouri.

Division No. 1.

Jan. 14, 1957.

James E. Crowe, John J. Shanahan, St. Louis, for appellant.

Shifrin, Shifrin & Agatstein, St. Louis, for respondent.

DALTON, Judge.

This is an appeal from an order granting a new trial to respondent on the ground of error in the giving of an instruction requested by appellant.

Appellant, St. Louis Housing Authority, a municipal corporation, instituted this action against respondent and others to acquire by condemnation proceedings particularly described property in the city of St. Louis for the purpose of constructing and maintaining a low rent housing project. The property to be acquired from respondent consisted of tract No. 138 which was used by respondent, in connection with other property, for cut-rate gasoline service station purposes.

Commissioners were duly appointed and filed their report by which they awarded respondent $32,500 in damages for the property appropriated. Respondent filed exceptions to the award and a trial was had before a jury resulting in a verdict for respondent for $35,000. Respondent moved for a new trial and assigned error on various matters, including the giving of instruction No. 5, on which latter ground the motion was sustained.

Since defendant-respondent claimed damages in excess of $52,000 and offered evidence in support of the claim, while plaintiff-appellant's evidence fixed the reasonable fair market value of the property taken at not to exceed $31,170, the amount in dispute exceeds $7500 and this court has jurisdiction of the appeal. Art. V, Sec. 3, Const. of Mo. 1945, V.A.M.S.

Instruction No. 5 is as follows: "The Court instructs the jury that in determining the fair market value of the property in controversy the volume of business done on said property may be considered by you only for the purpose of determining whether or not said property is being used by defendant for its highest and best use."

Respondent's motion for a new trial alleged error in the giving of the instruction as follows:

"* * *

"(a) Under said instruction, the jury was erroneously and improperly directed to limit its consideration of the substantial and uncontradicted evidence of the volume of business done on said property to the sole issue of whether or not said property was being used for its highest and best use.

"(b) The volume of business done on said property was proved by defendant by uncontradicted evidence of the gallonage dispensed therefrom, which evidence, properly admitted by the court, materially tends to prove the value of said property when devoted to its highest and best use, and was material and highly probative with respect to the reasonable rental and fair market value of said property. Under said instruction, however, it was mandatory for the jury to discard and disregard said evidence for that purpose, thus removing from the jury's consideration important and decisive facts.

"(c) Said instruction was not in accordance with the theory upon which the

case was tried and was inconsistent with the rulings of the court during the trial with respect to the admissibility of evidence of volume of business as bearing upon reasonable rental and fair market value.

"(d) The erroneous giving of said instruction materially and directly affected the amount of the jury's verdict, to the prejudice of this defendant."

The order sustaining the motion for a new trial merely stated that the court erred in giving instruction No. 5 at the request of the plaintiff (appellant here).

Only a brief review of the evidence is required. Respondent is a Missouri corporation engaged in the retail distribution of gasoline in the St. Louis area. The service station in question fronts on Twelfth street for the entire block from Hickory to Morrison, and includes tracts Nos. 136, 137, 138 and 139, but only tract No. 138 was owned by respondent and is involved in this proceeding. Only 25% of the station building was located on this tract, but apparently all gasoline pumps were on the property. The traffic flow in front of this station was approximately 35,000 cars in a twenty-four hour period and the station was operated twenty-four hours per day and had been in operation for several years. The station was located on "the right-hand side of the street going out of the center of the town" and had good visibility and good means of ingress and egress. The nearest major company station was a block away. In the last year of its operation prior to its appropriation, respondent's said station "pumped" 1,138,-811 gallons of gasoline or an average of approximately 94,900 gallons per month. Respondent was not a major oil company, but marketed its gasoline under the major brand name of Mars gasoline, and it operated its station under a classification referred to as a super cut-rate gasoline station.

The testimony of Meyer Kopolow, a qualified witness and the president of the respondent company, tended to show that there was a standard or formula in the oil business by which the fair market value and the reasonable rental value of a station was determined. He said the customary standard in the industry for determining the lowest possible selling or purchasing price of a station was the equivalent of one dollar per gallon "pumped" at the station on the average per month; and that, if a station was averaging 50,000 gallons per month, the minimum purchasing or selling price would be $50,000. His testimony further tended to show that in leasing such service stations, operators and owners of major oil stations, applied a formula in determining reasonable rental value; and that the minimum rental was usually fixed at one cent per gallon per month of gasoline sold on the premises, although the rental was sometimes higher. He said that the reason gallonage was so important was because the profitability and success of a station was dependent on the gasoline it sold. He also said the mentioned formulas were used in fixing and buying and selling prices of stations, and in determining rentals to be paid or received; and that such formulas were in customary usage in the industry as minimum figures. He fixed the fair market value of the service station and improvements at $95,000 and the value of the monthly rental per month at one cent per gallon of gasoline sold or $950 per month. He said the primary factor in determining the fair market value of a service station or its reasonable rental value was "the volume of business or gallonage which has been sold in that station in the past."

The testimony of Kenneth C. Baker, the president of one of respondent's competitors, tended to show that the standard or formula applied in the business in determining rentals, per month or per year as far as independent stations, such as defendant's, were concerned, was one cent per gallon on gasoline sold on the premises, but that in many instances the major oil companies leased property and paid rental of one and one-half cents per gallon. He

said that the use of the formula was common practice in the industry.

Witness H. O. Byrd, a real estate appraiser, testified concerning the value of tract No. 138. In determining the fair market value he used the income capitalization method based, in part, upon the rental value of the premises, which was based in turn at one cent per gallon on gasoline sold on the premises. He also used the "reproduction cost, less depreciation method," and ultimately arrived at the fair market value of tract No. 138, exclusive of the other tracts, as $55,200.

Another witness, Enno Krache, whose qualifications were admitted, also relied principally on "the capitalization approach" by capitalizing the net income the property could be expected to produce. His conclusion was based simply upon the amount of rent the property would command and "not upon the amount of profits its operation would produce." He fixed the fair market value of tract No. 138 at the date of appropriation at $52,000. We need not review the detailed method by which he ultimately arrived at this value for this particular portion of the service station premises in question.

One of plaintiff's witnesses used "the cost approach and considered comparable sales in the neighborhood method" and he gave a breakdown on the reproduction costs for the improvements. He said gallonage was not important because it took into consideration other factors than the land and its improvements. He said consideration should be given to the cost of comparable or substituted property. He fixed the value of the tract in question at $31,170. Another witness mentioned three different methods of appraisal, but used what he termed "the reproduction less depreciation approach." He fixed the rental of the station in question at $300 per month and the fair market value of tract No. 138 at $30,000. This witness said he didn't recognize that gallonage had anything to do with fair market value or the amount of rent when comparable stations were available.

Appellant first contends that the court erred in sustaining respondent's motion for new trial "* * * because said instruction when read with the other instructions in the case properly charges the jury that the measure of damage for the appropriation of respondent's property is its fair market value computed upon the basis of its highest and best use." Appellant says that when so considered the instruction "properly charges the jury as to the elements of damage which it may consider in arriving at the fair market value of respondent's property."

In determining whether a particular instruction is prejudicially erroneous it is well settled that all of the instructions must be read and construed together as a single charge and, where so taken together, they do contain a complete exposition of the law and cover every phase of the case, a verdict obtained thereon will be sustained, although some of the instructions taken separately may be incomplete and open to criticism. Venditti v. St. Louis Public Service Co., 362 Mo. 339, 240 S.W.2d 921, 926; Higgins v. Terminal R. Ass'n of St. Louis, 362 Mo. 264, 241 S.W.2d 380, 387; Rhinelander v. St. Louis, S. F. R. Co., Mo. Sup., 257 S.W.2d 655, 659. Instructions may be supplementary or explanatory of each other, but they must not be conflicting nor misleading when the charge is considered as a whole. West v. St. Louis Public Service Co., 361 Mo. 740, 236 S.W.2d 308, 313; Nelson v. Tayon, Mo.Sup., 265 S.W.2d 409, 414.

In argument the appellant refers to instructions 1, 3, 4 and 6. Instruction No. 1 directed a verdict for defendant and directed the jury, in assessing the just compensation to be paid for the property taken, to "consider all the evidence admitted by the court and all of the instructions given by the court." Appellant insists that there is no inconsistency between instruction

No. 5 and instruction No. 1, because instruction No. 1 advised the jury to consider all the evidence admitted by the court, which of course included "evidence of rental value." Appellant refers to instruction No. 3 as properly defining the term "fair market value," and to instruction No. 4 as charging the jury that in arriving at fair market value the property must be considered in the light of its highest and best use. Appellant concedes that instruction No. 5 limits the jury's consideration of volume of business done on defendant's property to the single issue of its highest and best use, but appellant insists that the effect of this instruction, when read with instruction No. 4, "is to require the jury to determine first the highest and best use of defendant's property, and to compute fair market value upon that basis."

■ Appellant further insists (1) that "since highest and best use necessarily includes all of the elements of value which relate to the use being made of the property—including volume of business done thereon—and fair market value is computed on the highest and best use, none of the factors of value which respondent has a right to have considered by the jury are excluded by the instructions"; (2) that "instruction No. 5 merely limits the jury's consideration of volume of business to the issue of whether or not market value is increased by reason of such use of the property"; and (3) that the instruction "does not permit the jury to consider volume of business as a separate item of damage in assessing compensation." Appellant insists that, "since it is the land which is appropriated and not the business conducted thereon, appellant had the right to limit the jury's consideration of the evidence in question to the issue of the highest and best use of the property."

Appellant further argues that *rental is not based upon the volume of business done on the property*; and that volume of business is not for consideration, except to the extent that such volume of business adds to

the value of the use; and that "instruction No. 5 does not take from the jury consideration of volume of business as it affects rental value; on the contrary it establishes the basis upon which rental value is allowed." Appellant summarizes its position on this point as follows: "Instruction No. 5, in requiring that the jury consider volume of business only on the issue of highest and best use, does not deprive respondent of the benefit of such evidence on the issue of fair market value, or rental value as a possible capitalization factor to arrive at market value, since the highest and best use of land incorporates all of the elements of value which relate to the use being made of the property and the jury is instructed to return a verdict upon that basis."

There was no issue between appellant and respondent as to the highest and best use of the premises in question. Two of appellant's witnesses and two of respondent's witnesses testified that the use being made of the premises at the time of the appropriation, to wit, for gasoline service station purposes was the highest and best use of the premises. There was no evidence to the contrary. Further, there was no evidence "of volume of business done on defendant's property" in terms of money or profits or otherwise, except as to the number of gallons of gasoline "pumped" and sold on the premises during the year immediately prior to the appropriation.

The gallonage of gasoline sold on the premises was offered to show the rental value of the premises, since there was evidence that service station rentals were determined on that basis, and rental value was considered to be a factor in determining the fair market value of the property condemned.

■ In view of the evidence offered and received, we think the instruction was erroneous and misleading and particularly prejudicial to respondent. As stated, on the evidence presented there was no issue between the parties as to the highest and best use of the premises and instruction No. 5,

expressly limited the jury's consideration of volume of business (in the sense of gallonage, since the only evidence of volume of business was as to gallonage) to a determination of whether or not said property was being used for its highest and best use. In other words, the instruction told the jury that the evidence of gallonage could only be considered for the purpose of determining a matter which was not an issue between the parties. Respondent's evidence as to the rental value of the premises based upon gallonage as a basis for determining the fair market value of the premises was effectively excluded from consideration by the jury. Not only would the instruction have been understood by the jury as excluding from their consideration all evidence of rental value based upon gallonage, but the instruction conflicted with instruction No. 1, since instruction No. 1 in effect told the jury to consider all evidence for all purposes while instruction No. 5 limited the jury to a consideration of certain evidence to certain purposes.

Appellant further contends that "even though instruction No. 5 be construed as withdrawing from the jury consideration of rental value as a possible capitalization factor, the court erred in holding such instruction erroneous, where the evidence offered by respondent on the issue of rental value was speculative, uncertain and remote, and the objection of appellant to admission of such evidence should have been sustained."

■ No one questions the general rule stated by Lewis in his work on Eminent Domain (Vol. 2, 3rd Ed., Sec. 727), as follows: "While it is proper to show how the property is used, it is incompetent to go into the profits of the business carried on upon the property. No damages can be allowed for injury to business. The reason is that the constitution and the statutes, as ordinarily worded, require only that just compensation shall be made for the property taken." And see City of St. Louis v. St. Louis, I. M. & S. Ry. Co., 266 Mo. 694, 182 S.W. 750, L.R.A.1916D, 713; Tate v. State Highway Comm., 226 Mo.App. 1216, 49 S.W.2d 282, 285; City of St. Louis v. Paramount Shoe Mfg. Co., 237 Mo.App. 200, 168 S.W.2d 149, 154.

■ Nor does respondent question the statement quoted in Accomac Realty Co. v. City of St. Louis, 347 Mo. 1224, 152 S.W.2d 100, 102, as follows: "'With remarkable unanimity the American jurisdictions hold that evidence of profits derived from a business conducted on property is too speculative, uncertain, and remote to be considered as a basis for computing or ascertaining the market value of the property in condemnation proceedings.'"

In the trial of the cause appellant objected to the entire line of testimony concerning the gallonage formula in arriving at rental value, on the ground that it did not tend to show fair market value; that it bore no relationship to fair market value; that it was highly speculative and dependent upon factors other than fair market value; and that it was an indirect attempt to get into the question of profits.

■ Appellant's final theory concerning instruction No. 5, is that the evidence concerning gallonage sold on the premises, as offered by respondent on rental value of the premises in question, was improperly admitted by the court because it related to "volume of business on the issue of rental value," and, therefore, the instruction was not objectionable in withdrawing the evidence from the jury. Evidence erroneously admitted may properly be withdrawn from the jury by instructions. Gutzweiler's Adm'r v. Lackmann, 39 Mo. 91, 100; Ingram v. Prairie Block Coal Co., 319 Mo. 644, 5 S.W.2d 413, 417. In contending that the trial court erred in admitting this testimony it is appellant's position that, while rental income insofar as it throws light on market value may be material and proper as a possible capitalization factor to assist in determination of actual market value, in this instance the formula utilized by re-

spondent's witnesses to establish the estimated rental value was improper and the results obtained by such method should have been excluded.

Appellant cites Welch v. Tennessee Valley Authority, 6 Cir., 108 F.2d 95, 100(14), certiorari denied Welch v. U. S. ex rel. and for Use of Tennessee Valley Authority, 309 U.S. 688, 60 S.Ct. 889, 84 L.Ed. 1030, and quotes as follows: "Rental value is always admissible in determining market value of real estate and actual earnings from the property is * * * of weighty consideration, but if speculative, these two types of evidence are of no value."

Appellant then insists that evidence of rental value based upon gallonage is speculative and uncertain because the number of gallons that will be sold at a particular station depends on highly variable factors like management, price, service, hours of operation, discounting practices and conditions in the industry. There was no evidence however tending to show that rentals on service station properties were not generally based on from one cent to one cent and one-half per gallon of gasoline sold on the premises regardless of who was operating the station, or how it was operated. No evidence was offered tending to show that the gallonage of gasoline sold in the premises was not the primary factor taken into account by those engaged in the retail oil and gasoline business in determining rental value of such service station properties. Appellant does say that "no evidence was offered in the instant case which would show with reasonable certainty the volume of business that would proximately follow ownership of respondent's property generally." We think the evidence sufficient for that purpose. The evidence offered as to the custom and practice in the business in using the formulas mentioned as a basis for determining the value and the rental value of such stations and the further testimony as to the gallonage sold on the premises and the value and rental value thereof was properly admitted. The jury was entitled to consider all of such evidence in determining the fair market value of the premises in question. While no specific authority is cited, and we have found none, the application of general rules would indicate that evidence of gallonage of gasoline sold on the premises is properly admitted for consideration by the jury on the issue of rental value and fair market value of the premises condemned where, by accepted standards and criteria in the trade or business, rentals and values of such property are based thereon. See City of St. Louis v. Rossi, 333 Mo. 1092, 64 S.W.2d 600, 607; Chicago, B. & Q. R. Co. v. North Kansas City Development Co., 8 Cir., 134 F.2d 142, 152; In re Armory Site in Kansas City, Mo.Sup., 282 S.W.2d 464, 470; State ex rel. State Highway Comm. v. Cox, 336 Mo. 271, 77 S.W.2d 116, 119; State ex rel. State Highway Comm. v. Flynn, Mo.App., 263 S.W.2d 854, 857(13); City of St. Louis v. Paramount Shoe Mfg. Co., 237 Mo.App. 200, 168 S.W.2d 149, 155 (13–14); 29 C.J.S., Eminent Domain, § 168, p. 1039; and 29 C.J.S., Eminent Domain, § 273, p. 1260; Housing Authority of New Orleans v. Persson, 203 La. 255, 13 So.2d 853.

The trial court properly sustained respondent's motion for a new trial because instruction No. 5 was misleading and erroneous for the reasons stated.

The order granting a new trial is affirmed.

All concur.