**LAND CLEARANCE AUTHORITY,**
Plaintiff-Respondent,

v.

**Elmer G. DOERENHOEFER, Exceptions of Jack Esses Distributing Company,**
Defendant-Appellant.

No. 50921.

Supreme Court of Missouri,

En Banc.

July 11, 1966.

Irvin Dagen, St. Louis, for plaintiff-respondent.

Nathan Kaufman, Guilfoil, Caruthers, Symington, Montrey & Petzall, John P. Montrey, St Louis, for appellant.

DONNELLY, Judge.

This is a condemnation case wherein Land Clearance for Redevelopment Authority of the City of St. Louis is the plaintiff-respondent (the Authority), and Jack Esses Distributing Company is the defendant-appellant (Esses).

Esses has appealed from a judgment entered on a jury verdict assessing Esses' damages at $55,000. The record shows that Esses' claimed damages totaled $79,022 and evidence was adduced to support said claim. The amount in dispute, therefore, is $24,022. This Court has jurisdiction. Missouri Const.1945, Art. V, § 3, V.A.M.S.; State ex rel. State Highway

Commission v. Rauscher Chevrolet Co., Mo. Sup., 291 S.W.2d 89.

The property condemned was located on the southeast corner of Fourth and Clark Streets in St. Louis, Missouri. It extended fifty-nine feet, ten inches along Fourth Street and seventy-three feet, two inches along Clark Street, with a building thereon consisting of four floors and a basement. Esses operated a wholesale and retail distributorship of general merchandise.

Esses' appraiser, George C. Hetlage, testified that the fair market value of the property taken was $79,022. Thomas J. O'Toole, testifying for the Authority, estimated the damages at $50,000. Charles R. McCoy, testifying for the Authority, estimated the damages at $49,000. The property was taken by condemnation in March, 1963.

The questions on this appeal involve whether the trial court erred in admitting certain testimony.

■ First, Esses alleges the trial court erred in admitting evidence showing that Esses purchased the property in March of 1954 for $40,000.

In State ex rel. State Highway Commission v. Rauscher Chevrolet Co., supra, 291 S.W.2d 89, this Court stated at page 92: "It is the established rule in this state, and generally, that the price an owner paid for property being condemned is admissible as some evidence of its value at the time of appropriation. That rule applies unless circumstances appear which destroy the relevancy or probative value of that otherwise relevant and highly important evidence. For example, the purchase must have been recent and not remote in point of time. Marked changes in conditions or values must not have occurred since the sale. The sale must have been voluntary in the sense that the seller and buyer were each capable and desirous of protecting his interest. The sale must not have been a forced sale, such as a tax or foreclosure sale. * * * "

The taking by condemnation in March of 1963, was nine years after the purchase of the property in March, 1954. After the purchase, and before the taking, the Veterans Bridge across the Mississippi River and the Third Street Highway were opened, construction of the riverfront memorial project was begun, the Pierce Building and Cotton Belt Building were remodeled, the Old Courthouse at Fourth and Market Streets was made into a national monument, a new office building was constructed nearby upgrading the neighborhood, railroad tracks along the riverfront were hidden, the construction of the Gateway Arch was started, and Esses had made some improvements on the property. When Esses purchased the property in 1954 for $40,000 it relinquished a five-year lease on the property. This lease encompassed 2,500 square feet on the first floor of the building, 2,500 square feet on the second floor, 4,100 square feet on the fourth floor, and 225 square feet in the basement, for a total rental of $4,200 per year. The record shows that this lease was for five years, beginning in 1950, with a five-year option. There is no evidence as to whether the relinquishment of the lease was favorable or unfavorable to Esses, although there is an inference that the negotiations for purchase were begun pursuant to a request by Mr. Showers, one of the sellers.

Esses contends that the instant case comes within the exception to the general rule set forth in the Rauscher case, supra. We believe that the circumstances in evidence do not destroy the relevancy and probative value of this evidence. In City of St. Louis v. Paramount Shoe Mfg. Co., 237 Mo.App. 200, 168 S.W.2d 149, nine years elapsed and The Great Depression intervened between the purchase and the taking, and similar evidence was there held to be admissible. The testimony here showing Esses purchased the property in March of 1954 for $40,000 was admissible as some evidence of value. The purchase price was relevant evidence in helping the jury to arrive at its verdict. Mr. Hetlage, appraiser for Esses, stated

that this evidence tended to support his estimate of the value of the property at the time of taking. The verdict assessed Esses' damages at $55,000. The jury could reasonably have concluded that over the nine-year period since the purchase, and in view of the improvements made by Esses and the upgrading of the neighborhood, the fair market value of the property had increased by the amount of $15,000. The trial court did not abuse its discretion in permitting the jury to consider this evidence. State ex rel. State Highway Commission v. Schutte Inv. Co., Mo.Sup., 334 S.W.2d 241, 246; State ex rel. State Highway Commission v. Johnson, Mo.Sup., 287 S.W.2d 835, 837.

■ Esses cites Metropolitan St. R. Co. v. Walsh, 197 Mo. 392, 94 S.W. 860, and Kansas City v. Thomson, Mo.Sup., 208 S.W.2d 216, for the proposition that prices paid by the condemning authority for comparable property are not admissible on the question of market value of the condemned property in issue. Esses urges that this rule and the rule announced in the Rauscher case, supra, represent "a double standard." We do not agree. The Rauscher rule contemplates a situation where the sale is voluntary between seller and buyer. The rule stated in Kansas City v. Thomson, supra, contemplates a situation where an element of coercion is present.

■ Second, Esses alleges the trial court' erred in admitting evidence that, after Esses moved from the property at Fourth and Clark Streets to a building at Tenth and Clark Streets, Esses paid a rental of twenty-five cents per square foot. The Authority contends this evidence was admissible and cites State ex rel. N. W. Elec. Power Co-op, Inc. v. Waggoner, Mo.App., 319 S.W.2d 930; City of St. Louis v. Paramount Shoe Mfg. Co., supra, 237 Mo.App. 200, 168 S.W.2d 149; and St. Louis Housing Authority v. Bainter, Mo.Sup., 297 S. W.2d 529. In none of these cases was the admissibility of evidence of rental income from comparable properties involved. They are not in point.

While evidence of rental income derived from *the property condemned* has been held admissible to show the market value of the property, City of St. Louis v. Rossi, 333 Mo. 1092, 64 S.W.2d 600, 607; State ex rel. State Highway Commission v. Flynn, Mo. App., 263 S.W.2d 854, 857, evidence of rental value of comparable property in the neighborhood is generally not admissible to prove the fair rental value of the property condemned. State ex rel. State Highway Commission v. Vorhof-Duenke Co., (En Banc) Mo.Sup., 366 S.W.2d 329, 340 [16]; 5 Nichols on Eminent Domain, 3rd Ed., § 19.21 [1], and thirteen cases there cited, from eight jurisdictions. The reason is that such testimony "does not have the independent evidentiary value of an arms-length sale of comparable property in the vicinity." State ex rel. State Highway Commission v. Vorhof-Duenke Co., supra, 366 S.W.2d 329, 340, that would "warrant the extension of the field of controversy and fact finding which is entailed in its admission." 5 Nichols, supra, § 19.21 [1]. Therefore, if this evidence had been offered in the first instance by the Authority, it would have been properly excluded. However, other factors must be considered.

The record shows that early in the trial, the Authority, on cross-examination of Jack Esses, attempted to get before the jury evidence of the twenty-five cents per square foot rental paid by Esses under the lease at the location at Tenth and Clark Streets. At that time Esses' objection to this evidence was sustained by the trial court. Later in the trial, on direct examination, to establish market value of the property condemned, Esses' expert witness Hetlage undertook to show its rental value. The property was not being rented because occupied by the owner, so it was necessary to establish a hypothetical rental value of the property. To do so Hetlage testified as

to rentals received on comparable properties. His testimony, in part, is as follows:

"Q. I don't mean to interrupt. If you're going to move on to the next approach, why, you just go ahead.

"A. Well, on the basis of the capitalization of the income we arrived at a figure of some forty-one cents per square foot as reasonable annual rental for the space.

\* \* \* \* \* \*

"Q. How did you arrive at the average, Mr. Hetlage?

"A. We visited other properties in the area and secured rentals that were being paid on similarly occupied somewhat smaller properties.

"Q. Can you tell what other properties you're talking about?

\* \* \* \* \* \*

"THE WITNESS: There was the Washau property, two doors south of the subject property. I do not have the street ad[d]ress. This premise here rented at an average of forty-one and eight tenths cents per square foot, and had no elevator, and was rather inferior to the subject property.

"Another property was [sic] investigated was one occupied by the Mass. Sales Co. This was at 306 South Fourth Street, and next door to the subject property. It figured out to have a rental of sixty and one-half cents per square foot of floor area. In this case we felt that the property had an elevator and we felt in some respect is was superior to the subject property.

"Another one that was investigated was Proctor Sales. That was in the block north of the subject property. It had no elevator. It too, was considered to be somewhat superior to the subject property. It rented at seventy cents per square foot.

"I felt these things justified the conclusion that we arrived at for this rental rate. \* \* \*"

On cross-examination, Hetlage was questioned as to the rental paid (twenty-five cents per square foot) at the Tenth and Clark Streets location. At this time, and later when similar evidence was elicited from the Authority's witness O'Toole, Esses' objections were overruled by the trial court.

■ We regard this chain of events significant. The trial court did not allow evidence of the rental paid at Tenth and Clark Streets until after Esses had introduced evidence of rental income from properties in the area other than the condemned property. Esses injected the matter of comparable rentals into the case and is in no position to complain here. State ex rel. State Highway Commission v. Schutte Inv. Co., supra, 334 S.W.2d 241, 247; 88 C.J.S. Trial § 116, p. 236; 31A C.J.S. Evidence § 190a, pp. 509–512. "Where a party voluntarily accepts an evidentiary theory tendered by his adversary and offers evidence of the same kind and character, he waives his right to assert on appeal that his opponent's evidence was erroneously admitted. \* \* \*" Jackson County v. Meyer, Mo.Sup., 356 S.W.2d 892, 897.

The trial court did not abuse its discretion when it admitted the evidence in question. Biener v. St. Louis Public Service Co., Mo.App., 160 S.W.2d 780, 786.

The judgment is affirmed.

HYDE, HENLEY and EAGER, JJ., concur; HOLMAN, J., dissents in separate dissenting opinion filed; FINCH, J., dissents in separate dissenting opinion filed; and STORCKMAN, C. J., dissents and concurs in separate dissenting opinions of HOLMAN, J., and FINCH, J.

HOLMAN, Judge (dissenting).

I respectfully dissent upon both points ruled in the principal opinion. Under the particular facts of this case I do not think evidence of the purchase price should have been admitted. This because of the lapse of nine years *and* the many changes that had occurred in the area which should have

greatly increased the value of the property. The remoteness, the changes, and the fact defendant had a leasehold interest on the property when it was purchased, considered together, would destroy the relevancy and probative value of that testimony.

I agree with the rule stated in State ex rel. State Highway Commission v. Rauscher Chevrolet Company, Mo.Sup., 291 S.W. 2d 89, but it should be noted that that case involved the question as to whether evidence of the sale price of property sold during the pendency of the condemnation proceedings was admissible. The ruling in Rauscher has no application to the question we are considering. Several court of appeals cases have dealt with this question. In State ex rel. Highway Commission v. Malone, Mo.App., 45 S.W.2d 84, evidence of the price paid several years before the date of taking was held inadmissible where the land was shown to have depreciated in value after the date of purchase. In State ex rel. State Highway Commission v. Pope, Mo.App., 74 S.W.2d 265, 270, the court held it was not error to exclude evidence of the purchase price because the "evidence related to a time too remote to be of value or competent in estimating the market value of the property taken five years later and during a period, when, as the court well knows, property had greatly depreciated in value generally. The value of the land condemned relates to the time of the appropriation." As indicated in the principal opinion evidence of the purchase price nine years before the taking was held admissible in City of St. Louis v. Paramount Shoe Mfg. Co., 237 Mo.App. 200, 168 S.W. 2d 149. This court held evidence of the purchase price admissible in State ex rel. State Highway Commission v. Schutte Investment Company, Mo.Sup., 334 S.W.2d 241, but there the lapse of time between the purchase and taking was just slightly more than one year.

A case which should be discussed in connection with the point here involved is State ex rel. State Highway Commission v. Johnson, Mo.Sup., 287 S.W.2d 835, 837. The opinion therein held that it was not error to permit testimony of the purchase price paid about 25 years before the date of taking because there was evidence "that property values in the area had increased since 1929 [time of purchase], and since the witnesses of both parties valued the property before it was taken at more than $25,000 [purchase price]." That opinion was written prior to the time this court adopted the rule set out in the Rauscher case. In view of the Rauscher rule I respectfully suggest that the Johnson case should no longer be followed on the point we are considering. The basic reason for holding the testimony admissible in Johnson was that the property had increased in value and that would have been a reason for excluding it under the Rauscher rule.

As indicated, I would hold that the trial court erred in admitting evidence of the purchase price in this case.

I also have the view that the trial court erred in admitting evidence of the amount of rent paid by defendant Esses for the property to which it moved after surrendering possession of the property condemned. That property is located six blocks from the property taken. The principal opinion holds that evidence of the rental paid on properties other than that being condemned is not admissible. However, it justifies the admission of the testimony under consideration for the reason that Esses' appraiser testified that he considered the rent paid for three nearby properties in forming his opinion as to the fair rental value of the property condemned. One of those properties was next door to the subject property, another was two doors from it and the third was located not more than a block away. Apparently no objection was made to that evidence by plaintiff.

I do not think the foregoing testimony was a sufficient reason for admitting evi-

dence as to the rental value of property six blocks away. That distance in a rural area would not be considered remote but in downtown St. Louis a distance of six blocks will usually reach an area which is not comparable. It will certainly open the door to a likelihood of confusing juries to hold that evidence on a collateral issue, such as this one, is admissible concerning properties within a twelve block area surrounding the property being condemned. Moreover, it is obvious that plaintiff had some other reason for eliciting this evidence because it sought to prove such during its case in chief and the court properly excluded it. It is also difficult to° credit plaintiff with good faith in contending that the evidence in question was admissible in order to contradict the testimony of Esses' appraiser that the condemned property had a fair rental value of 41 cents a square foot because it's two experts respectively testified that the rental value of that property was 45 cents and 34 cents per square foot, an average of which would be about the same rental fixed by Esses' witness.

I have concluded that testimony to the effect that Esses was able to rent property in which to carry on its business for 25 cents a square foot was highly prejudicial. All of the evidence indicated that the property taken had a fair rental value of about 41 cents per square foot. If Esses was able to obtain an apparently satisfactory place to carry on its business at a rental which was much less than the rental value of the condemned property, the jury was very likely to conclude that Esses had not fared so badly in having its property taken by plaintiff.

I would reverse the judgment and remand the case for a new trial.

FINCH, Judge (dissenting).

I respectfully dissent from the majority opinion herein and concur in the dissenting opinion of Judge Holman.

The majority opinion holds that evidence of the price paid in 1954 by Esses for the property being condemned was admissible as some evidence of value as of the date of taking. This is done on the authority of State ex rel. State Highway Commission v. Rauscher Chevrolet Co., Mo., 291 S.W.2d 89. In my judgment, the opinion in the Rauscher case would make this evidence inadmissible. It holds, l.c. 92, that the general rule that the price·the owner paid for property being condemned is admissible as some evidence of its value at the time of appropriation, is subject to certain provisos. Some of those, l.c. 92, are that "the purchase must have been recent and not remote in point of time. Marked changes in conditions or values must not have occurred since the sale." The majority opinion recognizes and enumerates marked changes and improvements in the area, including the start of the Gateway Arch and the development of the riverfront area, and also recognizes that the purchase had been made nine years before. These conceded changes in the neighborhood, together with the lapse of time, made this evidence inadmissible under the Rauscher rule.

On reason and logic, this testimony of the 1954 purchase should not be admissible in this case. The sole and only purpose of the trial was to arrive at the fair market value of the property condemned as of the date of taking, which was 1963. Evidence is admitted for the purpose of determining that question and that question only. What the market value was at another date is wholly immaterial except that if there has been no material change in character of the neighborhood and property values have remained relatively constant, the amount of the purchase price paid becomes material *because it is evidence of the fair market value at the time of taking.*

Under the facts as recognized and enumerated in the majority opinion, the neigh-

borhood where this property was located had changed. The Rauscher opinion refers to "marked changes." It would be fair to say in this instance that there had been radical changes. The construction of the Gateway Arch and the entire riverfront renovation project revolutionized the situation in that area. The situation in 1963 was not the same as in 1954. The two experts on value who testified for the Authority fixed the value of the property condemned at the time of taking at $49,000 and $50,000, respectively. Hence, they did not fix a value substantially the same as the purchase price paid in 1954. In fact, no one did. Under those circumstances, evidence of what Esses paid in 1954 was evidence only of what the fair market value was in 1954, not what it was in 1963. It was not corroborative of any other evidence as to value in 1963 and should not have been admitted.

There is a further reason why the evidence was not admissible. When Esses acquired this property in 1954 for $40,000, the transaction also involved the cancellation of a five-year lease on the property held by Esses. No evidence was offered to show whether this was advantageous to Esses or to the seller, or how the cancellation of that lease affected the purchase price paid by Esses. There was no evidence to show whether the amount paid was higher or lower than it would have been if the lease had not been in existence and had not been cancelled. If the transaction in 1954 had included the purchase of a second tract and the $40,000 purchase price had been a lump sum payment for both, it is obvious that the sale price would not have been admissible unless broken down between the two tracts so that the evidence pertained only to the purchase price of the tract being condemned. For the same reason, evidence as to the purchase price paid in the transaction when it covered not only real estate purchased but the cancellation of a five-year lease was not admissible.

I would reverse and remand for a new trial.