STATE of Missouri ex rel. KANSAS CITY POWER & LIGHT COMPANY, a Corporation, Respondent,

v.

SALMARK HOME BUILDERS, INC., et al., Defendants,

Raytown Investment Company, a Corporation Appellant.

No. 48431.

Supreme Court of Missouri,

Division No. 1.

Nov. 13, 1961.

Burrus & Burrus, Rufus Burrus, Independence, for appellant.

Keith P. Bondurant, Howard F. Sachs, Spencer, Fane, Britt & Browne, Kansas City, for respondent.

HOLMAN, Commissioner.

In this condemnation case (filed October 30, 1956) the commissioners appointed by the circuit court awarded defendant Raytown Investment Company, a corporation, the sum of $20,000 for the damage to its property and both plaintiff and defendant filed exceptions to said award. The subsequent trial in the circuit court resulted in a verdict and judgment for defendant in the amount of $10,000 and defendant has duly appealed therefrom. Since defendant claimed damages in excess of $55,000 and offered evidence in support thereof, we have jurisdiction of this appeal as the amount in dispute exceeds $15,000. Section 477.040 RSMo 1959, V.A.M.S.

Plaintiff, in the course of its business, desired to construct a 161,000 kv transmission line from its Montrose Station in Henry County, Missouri to a point in the vicinity of Kansas City, Missouri, a distance of approximately 53 miles. In 1955 defendant had purchased 115 acres of land in Jackson County. This tract was "very

nicely adapted to a subdivision plan" and defendant immediately began to prepare plans to develop it for home sites. In this action plaintiff has condemned a right of way across this tract for the transmission line heretofore mentioned. The easement required was 160 feet wide, 1,375 feet long, and involved an area of 5.1 acres.

Defendant presented witnesses who fixed the damages resulting from the taking at amounts ranging from $55,000 to $97,000. Plaintiff's witnesses gave damage estimates which ranged from $4,000 to $7,000.

The first point briefed by defendant relates to the testimony of Frank Lacy who was assistant superintendent of plaintiff's right-of-way department. He stated that James G. Hoover owned a tract of residential subdivision land located near defendant's land which was comparable thereto. Over the objection of defendant Mr. Lacy was permitted to state that he had negotiated with Mr. Hoover and was able to purchase 1,700 feet of right of way from him for the line in question for $5,200. He was also allowed to testify that in the area generally they had purchased the right of way at prices ranging from $400 to $1,000 per acre.

■ We think the court clearly erred in permitting testimony as to the amounts paid by plaintiff to other owners of land to purchase the easement for the same transmission line for which it condemned the easement for a right of way across defendant's land. It has long been the established rule in this state that such evidence is not admissible. City of Springfield v. Schmook, 68 Mo. 394; Metropolitan St. Ry. Co. v. Walsh, 197 Mo. 392, 94 S.W. 860; Kansas City & G. R. Co. v. Haake, 331 Mo. 429, 53 S.W.2d 891, 84 A.L.R. 1477; Kansas City v. Thomson, Mo.Sup., 208 S.W.2d 216; State ex rel. State Highway Comm. v. Bruening, Mo.Sup., 326 S.W.2d 305.

The leading case upon this question is Metropolitan St. Ry. Co. v. Walsh, supra.

Therein this court quoted with approval from Lewis, Law of Eminent Domain, as follows: "What the party condemning has paid for other property is incompetent. Such sales are not a fair criterion of value, for the reason that they are in the nature of a compromise. They are affected by an element which does not enter into similar transactions made in the ordinary course of business. The one party may force a sale at such price as may be fixed by the tribunal appointed by law. In most cases the same party must have the particular property, even if it costs more than its true value. The fear of one party or the other to take the risk of legal proceedings ordinarily results in the one party paying more or the other taking less than is considered to be the fair market value of the property." 94 S.W. 864. The court then concluded that "after a most careful consideration of the rule announced by Mr. Lewis * * * that testimony, as to what was paid by the party who seeks to condemn property, to other parties, for lands to be used in connection with the same purpose for which the land sought to be appropriated was to be used, is inadmissible in the ascertainment of the value of the land involved in the proceeding to condemn, we have reached the conclusion that such rule of evidence as applicable to proceedings of this character, is predicated upon sound legal as well as logical reasons and should be followed." 94 S.W. 865.

We approve the statement in Nichols On Eminent Domain, Vol. 5, § 21.33, pp. 296, 297, as follows: "The reasoning which forbids consideration of forced sales generally, renders it incompetent for either party to put in evidence the amount paid by the condemnor to the owners of neighboring lands taken at the same time, and as part of the same proceedings, however similar they may be to that in controversy and whether the payment was made as the result of a voluntary settlement, an award, or the verdict of a jury. The rights of an owner to recover just compensation

for the taking of his land are not to be measured by the generosity, necessity, estimated advantage, or fear or dislike of litigation which may have induced others to part with the title to their real estate, or to relinquish claims for damages by reason of injuries thereto. It would be equally unwise, unjust and impolitic to make it impossible for a corporation which has taken land by eminent domain to compromise the claims of one owner without furnishing evidence against itself in the cases of all others who had similar claims. If a sale is made to a corporation about to institute condemnation proceedings if it cannot acquire the land by purchase at a satisfactory price, the price paid is not a fair test of market value."

In support of its contention that the testimony was properly admitted plaintiff relies primarily upon the case of State ex rel. State Highway Comm. v. Bruening, supra. We are unable to understand how that case supports plaintiff's contention as it specifically approved the rule established in the Walsh case. The Bruening case involved the condemnation of a right of way by the State Highway Commission. The case was reversed upon another ground but the court considered whether, upon a new trial, evidence would be admissible as to the price paid by Kansas City for nearby tracts bought for the purpose of establishing a municipal service center. We stated that the rule approved in the Walsh case would not *necessarily* be applied in case of a purchase by one having the power to condemn but who was not the condemner in the case being tried. We said in that opinion that "If on retrial the court does not invoke the rule of auxiliary policy referred to in Thomson, and if in fact Kansas City had no fixed purpose to condemn if it could not acquire the properties by negotiation; if it appears that no threats of condemnation were communicated to the prospective sellers and that otherwise the sales were voluntary, the evidence should be admitted." 326 S.W.2d 314. The Bruening case is clearly distinguishable from the case at bar and the statements made therein would not support the admission of the evidence here complained of.

For the reasons stated we rule that the testimony of Mr. Lacy heretofore described was improperly admitted and was prejudicial to defendant.

■ Most of the other points briefed by defendant relate to matters that will not likely recur on another trial and they need not be discussed herein. However, there is one point in regard to the admission of certain evidence upon which we consider it advisable to express our views. Robert L. Hamblin, president of the defendant corporation, testified in detail concerning the damages sustained by defendant. Upon cross-examination he stated that he owned one third of the stock of the corporation which he had purchased in September 1958, about two years after this proceeding was instituted. He further stated that the land in question was the sole asset of the corporation. Over the objection of defendant he was required to testify that he paid $15,000 for the stock he had purchased. On redirect examination defendant developed from the witness that there was "considerable mortgage indebtedness" against the land when he bought the stock. On recross-examination Mr. Hamblin was asked the amount of that indebtedness and replied that it was $45,000. There was no testimony as to whether the defendant had other debts or obligations.

Defendant contends that the evidence concerning the price paid for the stock was not admissible because it did not reflect the value of the land, the whole circumstances of the sale were not shown, and the evidence was misleading and presented an improper basis for the jury to consider in determining the value of the land. No case has been cited by either party which we consider helpful in determining the question presented.

Plaintiff contends, in effect, that the ownership of one third of the stock is equivalent

(in this case) to the ownership of one third of the land. If that position were sound the evidence of the sale price of the stock would probably be admissible as tending to prove the value of the land. However, there are many differences between the ownership of a minority interest in the stock of a corporation whose sole asset is a tract of land and the ownership of the title to a proportionate interest in the land itself. The owner of a fractional interest in land has some control over the management of the land and the use of the proceeds therefrom. If he cannot agree with his co-owners concerning the use and management of the land he can force a sale or division thereof by partition suit. However, the owner of a minority interest in the stock of a corporation does not have any legal control over the assets of the corporation, the disposition of the earnings therefrom, or the expense of conducting the corporate business. For those reasons a minority stockholder will often sell his stock for less than the proportionate value of the assets of the corporation. It would therefore appear that it would be quite speculative and somewhat misleading to admit evidence of the sale price of corporate stock as proof of the value of the land owned by the corporation.

Plaintiff suggests that the evidence was admissible to impeach the testimony of the witness concerning his opinion as to the value of the land. If the price paid for a minority stock interest is not proper proof of the value of land owned by the corporation it would seem to follow that evidence of the price paid by a witness for the stock would not be admissible to impeach his testimony as to the value of the land. Also, it should be borne in mind that Mr. Hamblin would naturally buy the stock at the lowest price for which it could be obtained. The price he paid would not be an indication that he did not consider that the stock was worth more than that amount. There are so many considerations that influence the market price of corporate stock other than the value of the assets of the corporation that the price of the stock is not a reliable index to the value of the corporate assets. As indicated, we accordingly conclude that evidence of the sale price of one third of the stock of defendant corporation is not proper evidence to prove the value of the land owned by the corporation and is not admissible to prove such value or to impeach the testimony of the purchaser of the stock as to the value of the land. The admission of that evidence would inject a collateral issue which would prolong the trial and tend to divert the attention of the jury from the real issue in the case.

The judgment is reversed and cause remanded for a new trial.

COIL, C., concurs in result.

HOUSER, C., concurs.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.