**STATE ex rel. KANSAS CITY POWER & LIGHT COMPANY, a Corporation, Respondent,**

v.

**SALMARK HOME BUILDERS, INC., et al., Defendants,
Raytown Investment Company, a Corporation, Appellant.**

No. 49648.

Supreme Court of Missouri,

Division No. 1.

Jan. 13, 1964.

Motion for Rehearing or to Transfer to Court En Banc Denied Feb. 10, 1964.

Rufus Burrus, Independence, for appellant.

Keith P. Bondurant, Kansas City, Spencer, Fane, Britt & Browne, Kansas City, for respondent.

COIL, Commissioner.

Kansas City Power & Light Company, a corporation, brought an action in October 1956 to condemn land for easements or rights-of-way for the construction, operation, and maintenance of 161,000 KV transmission lines upon and over certain real estate in Jackson County. Duly-appointed commissioners awarded appellant $20,000 as damages to a 115-acre tract over which the line was constructed. A jury trial on exceptions resulted in a judgment for appellant for $10,000 which, on appeal, was reversed and the case remanded for new trial. See State ex rel. Kansas City Power & Light Co. v. Salmark Home Builders, Inc., et al., Mo., 350 S.W.2d 771. At the new trial in March 1962, a jury awarded $7,700 and landowner, Raytown Investment Company, has again appealed and contends the trial court erred in admitting certain evidence and in giving an instruction. Inasmuch as there was substantial evidence to support appellant's claim that its damages exceeded $90,000, we have jurisdiction. Art. V, § 3, Mo.Const. 1945; § 477.040 RSMo. 1959, and V.A.M.S. We shall sometimes refer to the condemnor as plaintiff and to appellant as defendant.

At the time the condemnation action was filed, October 1956, defendant's 115 acres had been zoned residential and zoned for a sewer lagoon and the lagoon had been constructed. Defendant intended to subdivide the 115 acres into 350 to 400 lots and sell them as sites for 1-family residences. An engineer's preliminary plan had divided some of the acreage into lots and provided 33,853 lineal feet frontage. By the date of the condemnation action, a plat for only eight proposed lots had been filed. The right-of-way, according to defendant, affected 28 of the proposed lots, eliminating them in whole or in part, resulting in a loss of about 4,100 feet of frontage. Plaintiff's testimony was to the effect that it was not necessary to lose many, if any, front feet by a different rearrangement of lots than that suggested by defendant. At trial time 5½ years after the taking, plats had been filed for 154 lots and houses had been built on approximately one third of those.

The right-of-way was 160 feet wide and covered 5½ of the 115 acres. Plaintiff, by acquisition of the easement, obtained the rights, among others, of ingress and egress to construct, maintain, rebuild, and repair the transmission line; to remove and relocate the poles, wires, and appurtenances; to remove any or all of said installations

and to maintain and use gates in any fences which might cross the easement. Defendant and its assigns were given the right to cultivate and use the easement or right-of-way provided such use did not interfere with the construction, operation or maintenance of the transmission lines and so long as no permanent structures were erected.

Defendant's seven expert damages witnesses and two of plaintiff's testified that the highest and best use of the 115 acres at the time of taking was for residential building. The other two plaintiff's witnesses agreed that the best use of the land was for a residential subdivision but thought that, at the time of taking, the land should have been held for future development.

Defendant's evidence was that the difference in the fair market value of the 115 acres before and after the taking of the easement was from $50,000 to $97,000, while plaintiff's evidence was that the difference was from $4,600 to $8,000. Some of defendant's witnesses conceded that the figures they gave as the difference in the value before and after the taking were based in large part upon the loss to defendant of anticipated profits on the assumption that defendant would develop all of the lots in the subdivision shown on the preliminary plan, providing therefor streets, curbs, sewer lines, etc., and would sell all those lots. In other words, those witnesses conceded that they multiplied the number of lineal feet of lot frontage, which defendant's engineer testified were lost by reason of the right-of-way, by a $10-a-front-foot anticipated profit and treated that lost anticipated profit figure as one of the major items making up defendant's total damage. On motion to strike the testimony of one such witness, the trial court indicated that the matter could be handled by instructions to the jury.

Defendant contends first that the trial court erred in permitting plaintiff's counsel on cross-examination of defendant's witness Ong to read a portion of his testimony at the prior trial to the effect that his com-

pany had sold land in another subdivision for this same right-of-way for $1,000 an acre. Plaintiff contends defendant failed to preserve the matter for appellate review because it was not set forth in its motion for new trial. The only allegation in the new trial motion pertaining to the admission of evidence was that the trial court "erred in admitting incompetent, irrelevant and immaterial evidence on behalf of the plaintiff."

Civil Rule 79.03, V.A.M.R. provides in pertinent parts that "Allegations of error, in order to be preserved for appellate review, must be presented to the trial court in a motion for a new trial; * * *" [with certain exceptions not here applicable] and that "Where definite objections or requests were made during the trial in accordance with Rule 79.01, * * a general statement in the motion of any allegations of error based thereon is sufficient." Civil Rule 79.01 provides in pertinent part that for all purposes "for which an exception has heretofore been necessary it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefor * * *."

Defendant argues that inasmuch as at the trial it made a specific objection for stated reasons to the proffered testimony in question, its new trial averment that the court erred in admitting incompetent, irrelevant and immaterial evidence on behalf of plaintiff was sufficient to preserve the question for appellate review. This court so held in Taylor v. Kansas City Southern Ry. Co., 364 Mo. 693, 266 S.W.2d 732, 736 [1, 2]. It seems to us, however, that a new trial motion, while it need not state the objection or objections made, or set forth the reason or reasons given therefor, should in all events contain language which calls the trial court's attention to the evidence which forms the basis for the new trial specification of error. For example, in this case, it seems to us that the new trial motion should

have contained an averment which recited in substance that the trial court erred in admitting testimony of the witness Ong pertaining to the sale of acreage in Fairlane for the same right-of-way here involved for the reasons stated at the time the court overruled the objection made. Such a construction of the rules in question seems reasonable and proper when it is recognized that the very purpose of a motion for new trial is to call the trial court's attention to the errors which a party claims the court has made and to give that court an opportunity to correct them. Surely a general catch-all objection that the trial court erred in admitting incompetent, irrelevant and immaterial testimony should not be sufficient to preserve all matters for appellate review wherein the trial court (perhaps in ten to a hundred different instances) admitted evidence over the objection of a party. In view of the prior ruling to the contrary in Taylor, supra, and in some other earlier cases, we, nevertheless, shall rule the question presented on its merits.

Defendant's witness Ong testified that the corporation which he and his father operated had developed various subdivisions, including Fairlane in Jackson County which ran from 95th Street down Bannister Road to 99th Street; that it was begun in 1955 and completed in 1961; that defendant's property which was a short distance north of 99th Street would be about three fourths of a mile west of Fairlane; and that defendant's 115 acres had been damaged in the amount of $97,000 by reason of the right-of-way running through it.

On cross-examination these questions were asked and these answers given:

"Q * * * I will ask you this, Mr. Ong: Isn't it true that a section of this identical line does run across the back of Fairlane? A Well, it runs alongside of a railroad which bisects Fairlane into two portions. There are no through streets through Fairlane. The Kansas City Southern bisects Fairlane into two portions. The

power line does parallel the right of way of the railroad. There may be one or two lots which back on the right of way; I am not sure. At the time the homes were built, sold, and delivered the right of way did not exist, but it is insulated by the railroad from most of the lots it would be adjoining.

"Q This right of way is part of the Fairlane addition, is it not? A No, sir. As I say, there may be a portion of the right of way which would bound on the Fairlane addition, but it is bounded on one side by the Kansas City Southern right of way and on the other side it went principally through 19 acres of ground owned by Beamer, which separated Fairlane from the railroad.

"Q Are you saying that it is not a part of the Fairlane addition? A The Fairlane addition as it is legally platted adjoins no portion of the Kansas City Power & Light Company right of way.

"Q You testified in a prior trial of this case in April, 1960? A Yes.

"Q I will ask you if on Pages 157 and 158 of the transcript these questions were asked of you and these answers made by you."

Whereupon, out of the hearing of the jury, plaintiff's counsel objected to reading the questions and answers from the prior testimony and thereby disclose the sale of land in Fairlane for $1,000 an acre. Plaintiff's counsel stated that he desired to read that portion of the testimony to impeach the witness. The court overruled the objection, whereupon counsel proceeded with the cross-examination.

"Q * * * Mr. Ong, did you make these answers to these questions:

"'Q Isn't it true that in late 1956 or possibly 1957 your company sold five acres of right of way for this identical line in Fairlane for $1,000.00 an acre?

" 'A It is correct that we made such a transaction for ground that is unsuitable for home development.

" 'Q It was, however, part of the Fairlane addition?

" 'A It was part of the ground we had to acquire from the owner in order to obtain the rest of the property.'

Did you make those answers before? A Yes, sir; that is correct. There is a misunderstanding here as to what comprised the Fairlane addition. It is described by its legally recorded plats. The five acres you referred to was never included in the plat for record. It is not part of the 468 lots you were asking me about. It is part of the ground we had to acquire, but it was not and is not a part of the Fairlane subdivision as recorded.

"Q You .did have homes built on Fairlane at the time this right of way was sold? A That is correct.

"Q Some of those houses had lots that backed up to the right of way? A I think one or two; I'm not sure how many, but there might have been as many as five or six; I do not recall."

■ Defendant's contention that the trial court erred in permitting the portion of cross-examination in question is based upon the proposition that it is error to admit evidence of amounts paid by a condemnor or received by a condemnee for other property included in the same condemnation proceedings. That is the law and this court so held on the prior appeal of this case, State ex rel. Kansas City Power & Light Co. v. Salmark Home Builders, Inc., supra, 350 S.W.2d 772 [1]. In that case the assistant superintendent of the condemnor's right-of-way department testified that he had purchased a specified section of the right-of-way for so many dollars and that he had purchased other portions within a specified price range. It seems plain that the rule which precludes either the condemnor or

condemnee from affirmatively showing how much it paid or received for land involved in the same condemnation project has no application when the information as to the price paid or received is disclosed upon the proper cross-examination of a witness. In this case Mr. Ong was defendant's expert witness who testified that the difference between the fair market value of defendant's whole property immediately before the taking of the easement and the fair market value of defendant's property after such taking was $97,000; and he testified further that the reasonable market price of the 115 acres with the sewage facilities (lagoon) in existence was about $2,000 an acre.

■ In our view it was entirely proper for the trial court to permit plaintiff, on cross-examination of the witness, to adduce the fact that in late 1956 or 1957 Mr. Ong's company sold five acres of the same right-of-way for $1,000 an acre. The witness properly explained that the ground in question was not suitable for home development and that the five acres sold were not included in the recorded plat of the subdivision. But the witness also testified that there were some of the Fairlane lots which did adjoin the right-of-way, perhaps as many as five or six, and that the Fairlane subdivision was begun in 1955 and was reasonably close to the 115 acres involved.

Under the circumstances, we are of the opinion that the disclosure in question was a proper fact for the jury to consider, along with Mr. Ong's explanations, in weighing the witness's testimony as to value and damages, and thus that the trial court did not err in permitting the cross-examination in question. St. Louis, M. & S. E. R. Co. v. Continental Brick Co., 198 Mo. 698, 96 S.W. 1011, 1014(3); Nichols on Eminent Domain, 3d Ed., Vol. 5, § 18.45 [2], pp. 274, 275; 98 C.J.S. Witnesses § 379, pp. 138, 139.

■ Defendant next contends that the trial court erred in refusing to permit its witness Simley to testify that the selling

price of comparable subdivided acreage in the vicinity of the 115 acres was $30 a front foot in December 1956. The testimony was offered on the theory, as counsel for defendant put it, that it had "some bearing on what the land could be used for." The court agreed and said, "That is all in evidence." And indeed it was testified by seven witnesses for defendant and by two witnesses for plaintiff that the highest and best use of the tract was for residential purposes. So that the reason suggested by defendant's counsel for admitting the testimony, viz., that it had "some bearing on what the land could be used for," was a fact which essentially was not controverted at the trial. Be that as it may, however, the record shows that other witnesses, including two of plaintiff's expert witnesses, testified that the 115 acres should sell for $30 a front foot. Consequently, even if we assume that the trial court erred in excluding the $30-a-foot testimony by Simley, certainly the testimony of subsequent witnesses, including plaintiff's witnesses, repetitively placed in evidence the same uncontradicted fact. "It is * * * well settled that, if in a specific instance the evidence should not have been excluded, the error is harmless if the same evidence is found in the testimony of the same or other witnesses, given before or after the objection was sustained." Steffen v. Southwestern Bell Telephone Co., 331 Mo. 574, 56 S.W.2d 47, 48. Boring v. Kansas City Life Ins. Co., Mo., 274 S.W.2d 233, 238 [7]. Defendant's statement in its brief, that because the ruling was at the "very outset of the case" (Simley was the third witness), "the jury were given the erroneous idea that the sale price of this or other similarly situated land was not a proper element for them to consider in arriving at a proper verdict for consequential damages" is an unsupported conclusion not demonstrated by the record.

■ Defendant contends the trial court erred in giving this instruction No. 6:

"You are instructed that you are not to allow as part of the damages in this case the profits, if any, over the fair market value on December 28, 1956, of the land mentioned in the evidence, which the owner might anticipate or expect to realize if he subdivided the land affected by the easement into residential lots, completed all necessary street, curbing, gas line, grading, sewer and similar improvements, and thereafter sold such lots on a front foot basis as mentioned in the evidence."

Defendant argues that a jury could understand that instruction 6 meant that it was precluded from considering "the resale of the lands and the prices realized above costs of conversion of land into lots as one of the elements to be considered as establishing 'fair market value on December 28, 1956' "; that the jury would understand that the instruction denied it the right to consider "any reasonably expected profit over costs of subdividing the lands, as one of the facts tending to establish reasonable value on the date of taking"; and that the jury could have understood that the instruction excluded from its consideration "the evidence of sale price of lots over costs of preparing land for sale as such, as applied to its 'highest and best use' on 28th December, 1956."

In so far as the foregoing statements may mean that defendant was entitled to recover as part of its total damage the loss of speculative anticipated profits which might have been realized had the subdivision been entirely developed in accordance with the preliminary plan, we are of the view that the instruction correctly prohibited such recovery. In so far as the above-quoted statements may mean that the jury was entitled to consider the adaptability and capability of the 115 acres to be used as a subdivision for residential building and to consider the loss, if any, of a certain number of front feet at a certain price as elements of damages, we are of the opinion that the language of instruction 6 did not preclude the jury from considering such facts.

■ Damages which are sought on the theory of injury to the remainder of land

after the taking of a part must be direct and certain at the time of the appropriation and, conversely, not remote or speculative; and loss of profits is usually regarded as too speculative and remote to be considered as a basis for ascertaining the damages in a condemnation proceeding. City of St. Louis v. Paramount Shoe Mfg. Co., 237 Mo.App. 200, 168 S.W.2d 149, 153 [1–3], 154 [9, 10]; In re Armory Site in Kansas City, Mo., 282 S.W.2d 464, 472, 475. In 29 C.J.S. Eminent Domain § 160, p. 1026, it is stated: "In determining the uses of which the property is capable, it is necessary to have regard to the existing business or wants of the community or such as may reasonably be expected in the immediate future. This does not mean that the estimate may be based on any future profits that may be derived from the property when improved for a particular use when the business wants of the community may make it profitable to use the land in that particular way, but it means only that the fact of the property's capability or adaptability to the use may be considered as an element of its present value."

 In the present case, as indicated in the statement of facts, some of defendant's witnesses conceded that they arrived at their opinion as to the total damages sustained by defendant by considering that a major portion of that total was defendant's loss of anticipated profits on the assumption that defendant would, subsequent to the condemnation, proceed to develop the subdivision with curbs, streets, sewer lines, etc., and sell all of the lots shown on the preliminary plan at a certain price per front foot; and this, despite the fact that 5½ years after the taking only 154 lots (of 350 to 375 possible) had been platted and only 50 or 60 homes had been built. Because of that evidence, we think a cautionary instruction covering the matter of anticipated profits was proper. We are of the further opinion that while instruction 6 is not an especially clear statement of the proposition apparently intended, there is no misdirection in it; and that when instruction 6 is read

with instruction 2, the jury would not be misled by the lack of clarity of instruction 6. Instruction 2 told the jury that in determining the purpose for which defendant's land was suitable or adaptable, it was not confined to the use made at the time of the taking, but that the jury could also consider the uses for which the land was reasonably adaptable at that time, considering its location and surroundings. Contrary to defendant's contention that instruction 6 is in conflict with instruction 2, we consider those instructions to be consistent and complementary.

 Furthermore, instruction 6 did not, as contended by defendant, withdraw or destroy the evidence to the effect that the highest and best use of the 115 acres was for lots for residential building; nor did it, as defendant contends, preclude the jury from considering the highest and best use of the land in determining the fair market value prior to and after the taking. We repeat, we do not commend instruction 6 as an enlightening direction to the average juror, but we are convinced that it was not prejudicial to defendant. It was the duty of defendant to have offered a clarifying or amplifying instruction if it felt that instruction 6 was not clear enough.

Defendant contends further that instruction 6 was prejudicial because it caused an inadequate award to the landowner. It is apparent that such a contention assumes, contrary to our holding herein, that the instruction was erroneous.

 Defendant contends finally that instruction 6 violated Article I, Section 26, of the 1945 Missouri Constitution in that the award did not constitute "just compensation" as therein provided. In so far as this point may be considered a contention that the award was not supported by substantial evidence, the answer is that the testimony of four witnesses for plaintiff to the effect that the difference between the fair market value of defendant's property immediately before the taking and the fair market value

of its property immediately after the taking was from $4,600 to $8,000, constituted substantial evidence from which the jury reasonably could have found that the defendant was entitled to damages of $7,700. The conflicts in the evidence as to values and damages were for the jury to resolve. State ex rel. State Highway Commission v. Dockery, Mo., 340 S.W.2d 689, 695 [6, 7].

The judgment is affirmed.

HOUSER and WELBORN, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.