STATE of Missouri ex rel. STATE HIGHWAY COMMISSION of Missouri, Appellant,

v.

Lloyd GANN et al., Exceptions of Harley E. Hyatt et al., Respondents.

No. 52037.

Supreme Court of Missouri, Division No. 2.

Nov. 14, 1966.

Robert L. Hyder, Chief Counsel, Earl H. Schrader, Jr., Assistant Counsel, Legal Division, Missouri State Highway Department, Kansas City, by Darold W. Jenkins, Kansas City, for appellant.

Gayles R. Pine, Pine, Welling, Jones & Mitchell, Warrensburg, for defendants-respondents.

BARRETT, Commissioner.

In this proceeding in condemnation a jury awarded the respondent landowners, the Hyatts, $48,000 damages and the state has appealed. The proceeding has to do with the relocation and construction of 11.658 miles of U. S. Highway 50 through Johnson County just west of Warrensburg and particularly with the "second stage construction of two high-type pavements, each 24 feet wide, separated by a median" with limited access.

For the most part the necessary background facts are excerpted from the state's brief. The Hyatts owned a 240-acre farm, "L" shaped, "with one-half mile frontage on Highway 50" then a "land service road." State ex rel. State Highway Commission v. Vorhof-Duenke Company, Mo., 366 S.W. 2d 329, 335. The land was gently rolling, had been terraced and was about sixty percent tillable although prior to the date of the taking on August 13, 1965, it had been used mainly as a livestock farm. The state appropriated but 8.87 acres off the north side of the farm for an additional traffic lane, .21 acres for a drainage easement, .28 acres as a temporary work-and-turn easement *"and all rights of direct access to U. S. Route 50, except a twenty-foot entrance at the northeast corner of the remainder."* (Emphasis supplied.) While only 8.87 acres were taken from a 240-acre tract the 8.87 acres fronted directly on Highway 50 and virtually all of the farm's improvements were located on the 8.87 acres and they too were taken by this proceeding. The improvements consisted of a seven-room two-story house, one and a half baths, with full basement. There was a two-bedroom tenant house with bath. There was a barn which one witness described as "exceptional," large and ample for feed and livestock. There was a machine shed, a "good granary," a small garage, a chicken house all "in above average condition." Also taken by condemnation were a number of shade trees and shrubs, about 65 in number, two wells, one pond, a silo, 2200 feet of fence and a waterway. The state does not contend that the verdict is excessive and so the farm and its improvements are not further described in detail.

The state's first assignment is that the court erred in overruling its motion to strike from the jury list the name of John Van Meter. The problem was properly and timely. raised and as to this matter these are the circumstances: In the statutes relating to juries in general, Chapter 494 RSMo 1959, § 494.190 provides that "No * * * person * * * who is of kin to either party to any such cause within the fourth degree of consanguinity or affinity, shall be sworn as a juror in the *same cause.*" (Emphasis supplied.) Highway 50 and this proceeding has to do with the relocation and construction of a highway beginning at the Missouri-Kansas line at 52nd Street in Kansas City and ending on the Jefferson Barracks Bridge south of St. Louis. As stated, this proceeding is immediately concerned with 11.658 miles of Highway 50 in Johnson County. Juror Van Meter is not related in any manner to the respondent Hyatts whose 240-acre farm and its damages comprise the subject matter of this appeal. Mr. Van Meter is related to another landowner whose property in Johnson County was also subject to the general condemnation proceeding. That landowner is Charles W. Closter and Mr. Van Meter described the relationship in this language, he (Charles W. Closter) is "My grandfather's brother." The juror said he knew that "they took the land" and he did not know whether it was settled or not, "I don't know anything about it." He said that the relationship would not affect his ability to fairly try the Hyatt case.

 Unless unknown to the juror until after verdict the relationship disqualifies the juror (State v. Miller, 331 Mo. 675, 682–683, 56 S.W.2d 92, 96) and it may well be that juror Van Meter should have been excused. State ex rel. State Highway Commission v. Smith, Mo., 393 S.W.2d 544, 546. But this does not solve the problem here and the only case relied on by the state is not helpful because there "(t)he juror challenged stated that he was a second cousin to the wife of one of the defendants." The suit was for damages for trespass. to plaintiff's land, "cutting and removing therefrom a lot of timber and converting the timber to respondents' (defendants) use." Pemiscot Land & Cooperage Co. v. Davis, 147 Mo.App. 194, 126 S.W. 218. It does not appear that Mr. Van Meter served on this jury and it is assumed that his name was stricken when the state exercised its peremptory challenges. The latter fact is not determinative, however, and "Exceptions to the award of the commissioners in a condemnation case are triable de novo to a jury in accordance with the procedure applicable to ordinary civil actions." State ex rel. State Highway Commission v. Vorhof-Duenke Company, Mo., 366 S.W.2d 1. c. 366. It may be noted in passing that the disqualification does not apply and a juror is not incompetent merely because "the principles decided in one case may, in some collateral way, be beneficial to a party in another case, or that evidence similar to that in the first case might be introduced in the later case." 50 C.J.S. Juries § 218b(1), p. 955. The thing that sets this particular appeal and the proceeding with which it is concerned apart is that "(t)he filing of the separate exceptions involving the issue of damages for the taking of the respective tracts presented separate and distinct issues for trial under the procedure governing ordinary civil cases. * * * *Each of the exceptions filed by the respective landowners as to the awards for their separate tracts were independent of the exceptions as to the other tracts, as each claim stood upon its own footing.*" State ex rel. Highway Commission v. Curtis, Mo., 283 S.W. 2d 458, 465. Thus the Hyatts' exceptions and damages were "independent of the exceptions" of Mr. Van Meter's relatives, the Closters, and for these reasons the court did not prejudicially err in refusing to sustain the state's challenge for cause.

The appellant's other assignment is that the "court erred *in the exercise of his*

*discretion*" (emphasis supplied) in admitting into evidence and refusing to strike testimony "relating to alleged comparable sales consisting of five and ten-acre bare land building lots admittedly sold as building sites." The state contends that "the technique used by respondents was, in fact, a thinly disguised effort to elevate the before-taking value of this farm, by showing a higher and better use of the *entire* farm other than that use to which it had been put prior to the date of the taking, and to which it had always been put." To more precisely illustrate "(t)he precise point that appellant here wants to spotlight is that the testimony adduced by the respondents relating to suburban residential development potentiality applied to the *whole 240-acre farm,* and was used to elevate or substantiate the before-taking value of the *whole farm,* not just the part appropriated." (Emphasis here by counsel.)

The appellant admits that it "has not been able to find a Missouri case where the facts are on all fours with the facts (or opinions) in this case" and so it relies on what is said to be an analogy in the zoning cases. The state does cite volumes 4 and 5 Nichols, Eminent Domain, particularly § 12.314, p. 140. The first two sentences of that paragraph say that "In determining the market value of a piece of real property for the purposes of a taking by eminent domain, it is not merely the value of the property for the use to which it has been applied by the owner that should be taken into consideration. The possibility of its use for all purposes, present and prospective, for which it is adapted and to which it might in reason be applied, must be considered." Further § 12.3142(1) of this text together with an appropriate caveat (and see 5 Nichols, § 18.11(2), p. 160) sets forth an illustration which indeed is "on all fours" with the claim here: "The most characteristic illustration of the rule that market value is not limited to value for the existing use and the situation in which it is most frequently

invoked, and also most frequently abused, is found in those cases where evidence is offered of what the value of a tract of land that is used for agricultural purposes or is vacant and unused would be if cut up into house-lots. *It is well settled that if land is so situated that it is actually available for building purposes, its value for such purposes may be considered, even if it is used as a farm or is covered with brush and boulders."*

But it is not necessary to turn this appeal on this narrow ground alone, neither is it desirable to attempt to lay down a rule that would govern all cases in all and any events. As noted from the excerpt from its brief the state concedes that the court has a "discretion" and the problem here as Nichols suggests is whether in the circumstances of this record there has been a manifest abuse in admitting the testimony. In the first place the Hyatts' 240-acre farm fronted directly on U. S. Highway 50 for over 2200 feet. It is 28 miles from Sedalia, 40 miles from Kansas City and but 3½ to 4¼ miles from Warrensburg. And admittedly, including 10 acres directly across the road from the Hyatt land, some properties have been sold for both commercial and suburban home use. The respondents' witnesses testified to a before-taking value of the 240 acres of $96,000, the only qualified witness offered by the state testified to a value of $82,500 and thus as to a before-taking value the witnesses were in disagreement in opinion but $13,500. The real dispute was as to damages which the respondents' experts placed at $53,650 and the state's single witness at $27,500. And as stated, there is no claim here that the jury verdict of $48,000 is excessive.

■ In this situation the appeal is unlike those cases in which the court has granted one of the parties a new trial (Union Electric Company of Missouri v. McNulty, Mo., 344 S.W.2d 37) or in which the landowner's proof of "present value of the land included *the cost of developing*

*it"* (In re Armory Site in Kansas City, Mo., 282 S.W.2d 464, 473) or there was a theory of "loss of profits" which was so remote as to be speculative and perhaps misleading. State ex rel. Kansas City Power & Light Co. v. Salmark Home Builders, Inc., Mo., 375 S.W.2d 92. There have been cases in which it was said, as long ago as 1934, that "we do not think it may be said as a matter of law, in view of the fact that the farm is located on both state highway 67 and U. S. highway 61, just out of Fredericktown, the county seat of Madison County, that the availability of portions of the farm for acreage building sites is speculative, or not in reasonable anticipation." State ex rel. State Highway Commission v. Graham, Mo.App., 74 S.W.2d 493; Union Electric Company of Missouri v. Simpson, Mo.App., 371 S.W.2d 673, 678. The general rules together with the restrictions and limitations on the sales of land of like character are set forth in City of St. Louis v. Vasquez, Mo., 341 S.W.2d 839, 850–851, and it is not necessary to elaborate on the subject here, the differences in acreage, accessibility, possible use were not so disparate as to make them incomparable as a matter of law and it is sufficient here to say that there is no demonstrable, manifest abuse of discretion in the court's admitting testimony as to what the appellant designates as "potential suburban residential development property." State ex rel. State Highway Commission v. Galeener, Mo., 402 S.W.2d 336; Empire District Electric Co. v. Johnston, 241 Mo.App. 759, 268 S.W.2d 78, 81–82.

For the indicated reasons the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.